Bell *v.* Watson & Bro.

JAMES T. BELL *v.* WATSON & BRO.

1. REVENUE LAWS. *Construction.* A safe and sound rule of construction of revenue laws is to hold, in the absence of express words disclosing a different intent, that they were not intended to subject the same property to be twice charged for the same tax, nor the same business to be twice taxed for the exercise of the same privilege.

2. LICENSE TAX. *Livery Stable Keepers. Buggies.* Where, therefore, a revenue law declared the business of carrying on a livery stable to be a privilege, for the exercise of which a license tax was imposed, and also made the running of "hacks, carriages, and wheeled vehicles" for profit, a privilege subject to a license tax, it was held that a livery stable keeper who had been duly licensed for the year, could not be required to pay a license tax on each buggy used in his business, the proof showing that the letting of buggies for hire was a part of the business of a livery stable.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. N. BAXTER, J.

GUILD & DODD and ATTORNEY-GENERAL LEA for Bell.

STUBBLEFIELD & CHILDRESS for Watson & Bro.

COOPER, J., delivered the opinion of the court.

Watson & Brother were the keepers of a livery stable, and took out a license for one year from the 13th of March, 1875, as provided by law. They kept as part of their stock two buggies, for hire to customers for compensation. James T. Bell, the clerk of

the County Court, required them to take out license during the same year for the privilege of hiring these buggies for profit. They paid the tax under protest, and brought this suit for the recovery of the money. The evidence introduced on the trial was, that the hiring of buggies to third persons to be driven by themselves, was a part of the business of a livery stable, and that the buggies in question were only used in this way. The Circuit Judge, who tried the case without a jury, gave judgment for Watson & Bro., and Bell appealed in error.

By the act of 1873, ch. 118, sec. 46, the occupations that shall be deemed privileges and taxed as such, not to be pursued without a license, are enumerated. Among these are the keeping of livery stables, and the running of " hacks, carriages, drays, and wheeled vehicles " for profit. The privilege tax for keeping a livery stable is so much on each stall in the stable, and the tax for the privilege of running hacks for profit is a fixed sum on each vehicle. T. & S. Rev., sec. 553*a*, sub-sections 35, 71.

If the case turned upon the question, whether a buggy was a wheeled vehicle within the meaning of the statute, the conclusion would probably be, that it was not only literally, but in view of the legislative intent as shown by the vehicles enumerated, fairly embraced in the language used. *City of Memphis* v. *Battaile,* 8 Heis., 524. The real question, however, is whether the Legislature intended that the keeper of a livery stable should pay a license tax for the privilege of carrying on the business, and also separate license

taxes for the privilege of exercising essential parts of that business. Under the evidence introduced, the question is the same as if the statute had made the letting of horses for hire a privilege, and the keeper of a livery stable were required, in addition to his regular license tax, to pay license taxes on each horse.

Whatever power the Legislature may have to levy double taxes, the presumption always is against such an intent. The statute will not be construed so as to impose duplicate taxation, unless the construction is required by its express words or necessary implication. Cooley on Taxation, 165. The taxation of vehicles run for profit, finds ample scope in cases where they are run by the owners independently, and not as a part of a licensed business.

The statute contains an analogous instance in which the Legislature has shown that double taxation was not intended. Thus express companies, omnibuses, express wagons and carts, and transfer wagons, are severally enumerated as requiring for the privilege of the business or use, a license to be obtained by the payment of a tax. If, now, the tax were paid and the license obtained to carry on business as an express company, the business could not be exercised without the use of express or transfer wagons. So in the case of omnibus companies. But the Legislature, in placing the tax on express wagons and carts, including wagons and carts engaged in transferring, exempted those belonging to express and omnibus companies. T. & S. Rev.,

Bell *v.* Watson & Bro.

section 553*a*, sub-sec. 38. It may be said, it is true, that as the Legislature did expressly make the exemption in these cases, and did not similarly provide for the keepers of livery stables and their vehicles, the presumption would be, that no such exemption was intended in the latter instance. But it is more reasonable to conclude, that as the Legislature has declared against double taxation in one instance, they did not intend it in any instance, unless they have plainly or by necessary implication said so. It is, moreover, almost certain that the exemption was made in the particular case because the necessity was obvious, and overlooked in the other because the necessity was not apparent. The connection between the business of a livery stable and the running of "vehicles" for profit, was certainly not very obvious. The safe and sound rule of construction of revenue laws is to hold, in the absence of express words plainly disclosing a different intent, that they were not intended to subject the same property to be twice charged for the same tax, nor the same business to be twice taxed for the exercise of the same privilege.

In order to prevent misconstruction, it is proper to add, that the present rule only applies in a case where the occupation or business, the privilege tax upon which would be a double charge, is an essential part of the business for the exercise of which a license had been taken out. The running of an express wagon is a necessary part of the business of an express company. The running of a buggy is, according to the evidence in this case, an essential part of the bu-

siness of a livery stable keeper. On the other hand, although the running for compensation of an express cart, transfer wagon, hack, carriage, or other vehicle, might be useful, convenient and profitable to a hotel or tavern, it could in no sense be said to be a part of the business of keeping a hotel or tavern, nor would the running of billiard tables, or a drinking saloon, *et sic de similibus.* Woodman v. *The State,* 2 Swan, 353.

The judgment below will be affirmed with costs.