STATE *ex rel.* H. T. STEWART, State Revenue Agent,
v. LOUISVILLE & N. R. Co. *et al.*·

(*Nashville.* December Term, 1917.)

1. **TAXATION.** Statutes. Construction.
Tax statutes will be construed most strongly against the State.
(*Post, p.* 412.)

2. **STATUTES.** Construction. Pari materia.
Statutes in *pari materia* will be construed together, and the whole
statute considered in determining its true meaning. (*Post, p.*
412.)

Cases cited and approved: Memphis v. Bing, 94 Tenn., 644; English
v. Crenshaw, 120 Tenn., 531; Knox v. Emerson, 123 Tenn., 409;
Crenshaw v. Moore, 124 Tenn., 531; O'Neil v. State, 115 Tenn.,
427; Wingfield v. Crosby, 45 Tenn., 241; Lewis v. Mynatt, 105
Tenn., 508; State v. Railroad Co., 84 Tenn., 136; State v. Manson,
105 Tenn., 233; Pond v. Trigg, 52 Tenn., 533; Graham v. Gunn,
87 Tenn., 458; Heiskell v. Lowe, 126 Tenn., 475.

3. **TAXATION.** ''Privilege Taxes.'' What constitutes.
Revenue Act 1915 (Laws 1915, chapter 101) sections 8 and 10, tax·
ing transfers of realty and corporations acquiring the property of
another corporation, impose privilege taxes. (*Post, p.* 413.)

Cases cited and approved: Mabry v. Tarver, 20 Tenn., 94; French
v. Baker, 36 Tenn., 193; Clarke v. Montague, 71 Tenn., 277;
State v. Schlier, 50 Tenn., 281; Jenkins v. Ewin, 55 Tenn., 456.

4. **TAXATION.** Statutes. Double taxation.
Statutes creating privileges will be construed so as not to im-
pose double taxation, unless such construction is expressly or
impliedly required. (*Post, pp.* 413-416.)

Cases cited and approved: Druggist Case, 85 Tenn., 449; Memphis
v. Express Co., 102 Tenn., 336; Chattanooga Plow Co. v. Hays,
125 Tenn., 148; General Refining & Producing Co. v. Davidson
County et al., 201 S. W., 737.

State ex rel. v. Louisville & N. R. Co.

5. **TAXATION. Privilege taxes. Railroads.**

A railroad which paid a tax imposed by Revenue Act 1915, section 10, on corporations acquiring the property of another corporation, is also liable for the tax imposed by section 8 upon all transfers of realty, since such sections impose different taxes and double taxation does not result. (*Post, pp.* 416-418.)

Cases cited and approved: Street Railway Co. v. Morrow, 87 Tenn., 406; Knoxville v. Sanford, 81 Tenn., 545; Cigar Co. v. Cooper, 99 Tenn., 472.

Code cited and construed: Secs. 2330, 2438. (T.-S.).

6. **TAXATION. Privilege tax. Railroads.**

Under Code 1858, section 51, defining land, a railroad acquiring the property of another corporation is liable for the tax imposed by Revenue Act 1915, section 8, on all transfers of realty, although railroad property is merely incident to its use as a highway. (*Post, pp.* 419, 420.)

7. **TAXATION. Collection. Sufficiency of bill.**

A bill to enforce a transfer tax upon realty imposed by Revenue Act 1915, section 8, which alleged that the property was mortgaged for a certain sum and was worth considerably more, *held* not insufficient because not stating the property's true value. (*Post, p.* 420.)

8. **TAXATION. Collection. Prima-facie evidence.**

In a suit to collect a real estate transfer tax imposed by Revenue Act 1915, section 8, the value of the property stated in the deed is only *prima-facie* evidence of its true value. (*Post, p.* 420.)

Case cited and approved: Hitt v. Coal Co., 201 S. W., —.

9. **TAXATION. Transfer tax. Collection.**

Where a railroad pays the transfer real estate tax imposed by Revenue Act 1915, section 8, upon property extending through several counties, the tax need be paid only to the clerk of the county court of the county in which the deed to the land involved is first registered. (*Post, pp.* 420, 421.)

FROM DAVIDSON

Appeal from the Chancery Court of Davidson County.—JAS. B. NEWMAN, Chancellor.

BARTHELL, HOWELL & O'CONNOR and W. P. COOPER, for appellant.

KEEBLE & SEAY and F. M. BASS, for appellee.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The bill was filed by the State of Tennessee upon the relation of its revenue agent for the purpose of collecting from the defendants, the Lewisburg & Northern Railroad Company and the Louisville & Nashville Railroad Company, a transfer tax provided for by section 8 of the Revenue Act of 1915. The bill alleges that on October 1, 1915, the Lewisburg & Northern Railroad Company executed a deed to the Louisville & Nashville Railroad Company for its entire line of railroad situated in Davidson, Williamson, Rutherford, Marshall, Giles, and Lincoln counties, and particularly described as follows:

"First. A double track main line railroad, commencing at the junction of the main line of the Lewisburg & Northern Railroad with the main track

of the main stem, second division, of the Louisville & Nashville Railroad at or near Maplewood Station in the county of Davidson and State of Tennessee, and extending in a general southerly direction a distance of 10.62 miles to the connection of said main line with the main line of the Nashville & Decatur Railroad at or near Mayton in said Davidson county, on which portion of its line the said Radnor Yards is located, embracing approximately forty-four miles of track, and an area of property of approximately three hundred acres, said yard lying between Mayton and a point two and three-fourths miles north thereof. Contiguous to this portion of the line, is located the property of the company secured in connection with establishing reservoir supplying water to Radnor Yards and between the Granny White Pike and the Franklin Pike, fronting on the Granny White Pike, and embracing an area of approximately eight hundred acres of land for drainage area and reservoir site together with an easement for a pipe line connecting said reservoir with Radnor Yards, 10.62.

"Second. A main line of railroad commencing at the junction of the main line of said Lewisburg & Northern Railroad with the Nashville & Decatur Railroad at Brentwood junction in Williamson county, and extending in a general southerly direction, a distance of 78.99 miles through Williamson, Rutherford, Marshall, Giles and Lincoln counties to a connection of said main line of the said Lewisburg &

Northern Railroad with the main line of the Nashville & Decatur Railroad at the Tennessee-Alabama State Line, 79.99. The total mileage of said lines being 89.61 miles, together with right of way along said lines, side tracks, spur tracks, depots, section houses, and other buildings, situated in or upon the right of way, and including all the terminal facilities on said lines all locomotives, engines, tenders, cars, rolling stock and equipment of every kind, also all rights, privileges, immunities, franchises (except the franchise to continue to exist as a corporation), contracts, choses in action, and other property, legal or equitable now belonging or pertaining to line of railroad of the party of the first part and embracing all the property of the party of the first part of every description.''

There was a demurrer to the bill filed by both the defendants, and the Chancellor sustained the demurrer of the Lewisburg & Northern Railroad Company, and overruled the demurrer of the Louisville & Nashville Railroad Company. There was no appeal from his action in sustaining the demurrer as to the Lewisburg & Northern, and the Louisville & Nashville has appealed and assigned errors to that part of his decree which overruled the demurrer as to it.

Section .8 of the Revenue Act is as follows:

''That on all transfers of realty there shall be levied and paid in lieu of all other taxes a State tax of one dollar per one thousand dollars on the

consideration which shall in no case be less than the value of the property, which shall be collected by the clerk of the county court; and the county register is hereby required not to record said deed until the clerk certifies that this tax has been paid, but no fee shall be charged for such certificate or registration of the same and such certificate need not be registered, but the county court clerk shall receive as a fee for each deed probated the sum of fifteen cents, to be paid when the transfer tax is paid.''

Section 10 is as follows:

''That whenever hereafter any corporation organized under the laws of this or any other State, foreign or domestic, shall, by lease, purchase, consolidation, or merger, acquire the property of any other corporation having a franchise derived from this State, and shall, by virtue of such lease, purchase, consolidation, or merger exercise such franchise, then the corporation on so acquiring such property and exercising such franchise shall pay unto the State of Tennessee a privilege tax of one-tenth of one per cent. on the amount of the outstanding capital stock of the corporation whose property and franchise shall have been so acquired, after such lease, purchase, consolidation, or merger shall have been effected, said privilege tax shall be collected by the Secretary of State and by him paid into the treasury.''

It is insisted for the railroad company that the taxes provided in the two sections above copied are

taxes for the same transaction, or for a transaction of the same things, and, the company having paid the tax provided for by section 10, the imposition of the tax provided for by section 8 would be double taxation.

It is a well-settled rule in this State that statutes providing for levying and collecting of taxes are to be construed most strongly against the State in determining whether the tax has been imposed, and the scope of such statutes will not be extended by implication beyond the clear import of the language employed. *Memphis* v. *Bing,* 94 Tenn. 644, 30 S. W., 745; *English* v. *Crenshaw,* 120 Tenn., 531, 110 S. W., 210, 17 L. R. A. (N. S.), 753, 127 Am. St. Rep., 1025; *Knox* v. *Emerson,* 123 Tenn., 409, 131 S. W., 972; *Crenshaw* v. *Moore,* 124 Tenn., 531, 137 S. W., 924, 34 L. R. A. (N. S.), 1161, Ann. Cas., 1913A, 165. And words employed by the legislature are to be taken in their natural and ordinary sense. *O'Neil* v. *State,* 115 Tenn., 427, 90 S. W., 627, 3 L. R. A. (N. S., 762, *Wingfield* v. *Crosby,* 5 Cold., 241. Statutes *in pari materia* are to be construed together, and the whole statute is to be taken into consideration in arriving at its true meaning. *Lewis* v. *Mynatt,* 105 Tenn., 508, 58 S. W., 857; *State* v. *Railroad Co.,* 16 Lea, 136; *State* v. *Manson,* 105 Tenn., 233, 58 S. W., 319; *Pond* v. *Trigg,* 5 Heisk., 533; *Graham* v. *Gunn,* 87 Tenn., 458, 11 S. W., 214; *Heiskell* v. *Lowe,* 126 Tenn., 475, 153 S. W., 284.

The taxes provided for in sections 8 and 10 above quoted are privilege taxes. *Mabry* v. *Tarver,* 1 Humph., 94; *French* v. *Baker,* 4 Sneed, 193; *Clarke* v. *Montague,* 3 Lea, 277; *State* v. *Schlier,* 3 Heisk., 281; *Jenkins* v. *Ewin,* 8 Heisk., 456. The two cases last cited held that the definition of the word "privilege" as given by this court prior to the adoption of the Constitution of 1870 was in effect adopted by that instrument and must be understood as having been used in that sense. It was defined as the exercise of an occupation or business which required a license from some proper authority designated by law and not open to all or any one without such license; but the later cases cited above did not restrict the definition of privilege to the exercise of an occupation or business which required a license from the State, but expanded it to include a single transaction which the legislature had made a privilege.

It is also well settled in this State that statutes creating privileges will be construed so as not to impose double taxation unless such construction is required by the express words or by necessary implication.

In *Bell* v. *Watson,* 3 Lea, 328, Justice COOPER said that:

"A safe and sound rule of construction of revenue laws is to hold, in the absence of express words plainly disclosing a different intent, that they were not intended to subject the same property to be twice charged for the same tax, nor the same business to be twice taxed for the exercise of the same privilege."

In that case it was held that, where a taxpayer had been required to pay taxes as a livery stable keeper, he could not be required to pay taxes for letting his vehicles for hire.  The reason given was that it was necessary to have vehicles and let them for hire in order· to operate a livery stable.   In the *Druggist Case,* 85 Tenn., 449, 3 S. W., 490, a similar ruling was made.   In *Memphis* v. *Express Co.,* 102 Tenn., 336, 52 S. W. 172, it was likewise held that an express company which had paid its taxes for exercising such a privilege could not be taxed separately upon its teams and wagons.  In *Chattanooga Plow Co.* v. *Hays,* 125 Tenn., 148, 140 S. W., 1068, it was held that a manufacturer of plows who had paid his taxes as such could not be required to pay an additional merchant's tax for selling his manufactured products. In *General Refining & Producing Co.* v. *Davidson County et al.,* 201 S. W., 737, this term, it was held that a refiner of oil that had paid its taxes as such could not be required to pay a separate tax for storing its manufactured products in tanks, etc.   In the last two cases it was shown that the only sales made were sales for the purpose of realizing profits earned as a manufacturer.   These cases are given as illustrations of the construction by the court of the acts of the legislature levying privilege taxes in accord with  the rule stated in *Bell* v. *Watson,* supra. In neither case was it intended to express an opinion as to the power of the legislature to levy such taxes.

Reverting now to sections 8 and 10: It is said by the State that the deed of the Lewisburg & Northern Company to the Louisville & Nashville Company transfers real estate and falls within the literal terms of section 8; that the State is not concerned in this case with the collection of the tax provided for in section 10. The railroad company insists that the taxes provided for in the two sections are the same. It thus becomes necessary to construe the two sections, and in doing so we are necessarily governed by the foregoing rules.

The tax required by section 8 is a tax upon all transfers of realty. It is a State tax; it is levied upon the consideration paid and promised for the transfer of the realty which in no case can be less than the value of the property; it is collected by the clerk of the county court; the county register is forbidden to record the deed evidencing the transfer until the clerk of the county court certifies that the tax has been paid. The tax is levied upon the transfer of realty, and, in order to prevent evasion of its payment, the transferee is not permitted to register his deed until he pays his tax. While an unregistered deed is valid and binding between the parties, it is void as to creditors and subsequent purchasers without notice and also to purchasers who have their deeds first registered.

Section 10 provides for a tax whenever a corporation organized under the laws of this or any other State, foreign or domestic, acquires the property of

another corporation having franchise derived from this State by lease, purchase, consolidation, or merger, and shall, by virtue of such lease, purchase, consolidation, or merger, exercise the franchise so acquired; the amount of the tax shall be one-tenth of one per cent. of the amount of the outstanding capital stock of the corporation whose property and franchise shall have been so acquired. The tax is to be collected by the Secretary of State.

We think the two taxes are not the same. The first is a tax on the transfer of realty whether the transfer is made by a corporation or an individual; the second is a tax upon the privileges of one corporation acquiring the property of another corporation and exercising the franchise so acquired. The results of the two conveyances are widely different. The transfer contemplated by section 8 transfers the title of realty from one person to another, and for this privilege a tax is levied to be collected by the county court clerk. The tax provided for in section 10 is for the privilege of one corporation absorbing in whole or in part the property and franchises of another. It may be true that as an incident to the consolidation or merger, purchase or lease, of the property of one corporation by another, the title to real estate is transferred, but it does not follow as a consequence of this that the privilege created by section 10 is the same privilege as that created by section 8. Real estate may or may not be transferred

by the act contemplated by section 10 which must necessarily be transferred by the act contemplated by section 8. By section 10 one corporation is permitted to acquire not only the property of another but to acquire and exercise the franchise granted by this State. This privilege is extended to foreign corporations as well as domestic. It is conceivable that a foreign corporation might have powers granted by its charter far beyond those granted by the laws of this State and, by exercising the privileges granted by section 10, could acquire any franchise granted under the laws of this State.

A case is also conceivable where a railroad of large wealth might desire to construct a parallel for its own convenience and at the same time avoid the responsibility of such an undertaking. It could organize another corporation of, say, $10,000 capital stock, but possessed of all the franchises provided for by the laws of this State, and have this auxiliary corporation to construct the line of railroad which it desired. When the construction work should have been completed, the large corporation could require the small one to transfer the railroad property and franchises to it. It would thus accomplish at least two things if the construction contended for by appellant is the sound one: It would acquire property in this State worth, say, many millions of dollars by paying taxes under section 10 on the limited capital stock of the auxiliary corporation, and it would

139 Tenn.—27

have had a limited liability during the period of construction work.

But neither section 8 nor section 10 is limited to railroad corporations. Section 8 provides for a tax on "all transfers of realty," and section 10 covers transactions between any two corporations. They must both be construed with this in view. If the construction insisted upon were the correct one, a mining corporation which owns mining property of great value, but which has a capital stock of nominal value, could be consolidated with another mining corporation by the payment of the consolidation tax only, notwithstanding that its chief asset is real estate. Section 2330, Thompson's Shannon's Code. The same would be true of real estate companies which may be chartered under the laws of this State and whose assets are chiefly realty. Thompson's Shannon's Code, section 2438.

We have thus seen that the privileges provided for in sections 8 and 10 are not the same. The fact that there may be an indirect duplication is not an objection. *Street Railway Co.* v. *Morrow*, 3 Pickle (87 Tenn.), 406, 11 S. W., 348; 1 Cooley on Taxation, p. 387; Judson on Taxation, section 426. The similarity of taxation is incidental merely. The purposes sought by the legislature are different, and intended to meet different transactions. *Knoxville* v. *Sanford*, 13 Lea, 545; *Cigar Co.* v. *Cooper*, 15 Pickle (99 Tenn.), 472, 42 S. W., 687.

It is next insisted that it was not intended by the legislature that section 8 should apply to the transfer and sale of the entire properties of a railroad company, but that it was intended to and did apply only to the transfer of land or interest in land in the ordinary acceptation of the term. This contention is based upon the idea that a railroad is a highway, and as such is an entirety, and all of the properties which it owns are incidental merely to its functions as a highway. This is true as a general proposition, but it cannot be denied that the legislature has the power to tax the transfer of its real estate separate from its use in the discharge of its functions as a highway, that the legislature has levied a tax upon "all transfers of realty," and that the language employed would include transfers of realty belonging to a railroad company would seem to be too clear to admit of argument. There is nothing left for us to do but to give effect to the words employed by the legislature.

It is next insisted that the legislature did not intend or undertake to consider property as one class for the levying of *ad valorem* taxes and another class of property for levying privilege taxes. But, as stated above, the legislature beyond doubt has power to so consider it, and we think clearly that it has done so. The fact that the legislature had divided the property of railroads into localized and distributable proper- ties for the purpose of levying *ad valorem* taxes would not militate in any degree against its intention to levy

a tax upon ''all transfers of realty.'' The word ''realty'' means land as employed in the laws of this State, and the Code enacts, at section 51, that the word ''land'' signifies or includes ''lands, tenements and hereditaments, and all rights thereto and interests therein.'' These terms expressly include every species of realty which a railroad company may own.

The bill has not alleged in round terms what the value of the property transferred by the deed of the Lewisburg & Northern to the Louisville & Nashville is. It does state that a mortgage of about $15,000,000 has been placed upon the property and that it is worth a great deal more than that sum. A point is made in the demurrer that the bill does not allege the value of the property. We do not think the point is well taken, as its true value may be ascertained by proof. The value stated in the deed is only *prima-facie* evidence of the true value and, of course, any value stated in the bill is subject to be controverted by the proof. *Hitt* v. *Coal Co.,* 201 S. W.,—.

We should add that only one tax will be collected. The clerk of the county court of the county in which the deed is first offe- ed for registration will collect the transfer tax on the true value of the realty conveyed and so certify upon the deed. This payment of one tax in one county is all that the defendant is liable for, and the certificate attached to the deed by the county court clerk will authorize the registration of the deed in every county in the State in which it is

State ex rel. v. Louisville & N. R. Co.

desired to register it. This is a State tax and the counties are not concerned with it. One payment will satisfy the demands of the State, and that payment should be made to the clerk of the county court of the county in which the deed is first registered.