INTERNATIONAL HARVESTER COMPANY, International
Harvester Credit Co., Appellants,

*v.*

JOE C. CARR, Secretary of State, State of Tennessee,
and Thomas D. Benson, Commissioner of Revenue,
State of Tennessee, Appellees.

466 S.W.2d 207.

(*Nashville*, December Term, 1970.)

Opinion filed April 5, 1971.

ERNEST WILLIAMS, III, HEISKELL, DONELSON, ADAMS, WILLIAMS & WALL, Memphis, ROY A. MILES, JR., Nashville, for appellants.

246

DAVID M. PACK, Attorney General and Reporter, State of Tennessee, EVERETT H. FALK, Assistant Attorney General, Nashville, for appellees.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Appellants filed continuation statements, to continue the perfection of security interests in the inventory of their farm implement dealers, in the office of Joe C. Carr, Secretary of State. Against appellants' protests, Thomas D. Benson, Commissioner of Revenue of the State of Tennessee, collected a privilege tax on this recordation under the terms of sec. 67-4102 T.C.A. Item S(b). Appellants then sued to recover the taxes paid under protest. The Davidson County Chancery Court denied recovery of the taxes and the International Companies have appealed.

In their original bill they alleged that the taxes levied on the filings of continuation statements, filed pursuant to the Uniform Commercial Code, sec. 47-9-403(3) T.C.A.,

were illegal and unauthorized. They averred that they were the secured parties named in certain enumerated security agreements which were perfected in 1964 by filing financing statements with the Secretary of State of Tennessee pursuant to sec. 47-9-401 T.C.A., and that in order to continue perfection of their security interests they presented to the Secretary of State continuation statements pursuant to sec. 47-9-403(3), for the purpose of continuing the effectiveness of the previously filed financing statements. That defendant Carr refused to file the continuation statements without payment of the privilege taxes required by sec. 67-4102 T.C.A. Item S(b), so complainants paid the privilege tax under protest in the total amount of $5,470.48, and filed their continuation statements. Complainants then prayed for a decree for the total amount of the taxes so paid.

After defendants answered, the cause was heard on stipulated facts, and the entire record, upon which the Chancellor held that the taxes had been legally assessed and collected, and dismissed the original bill. The complainants have appealed and assign eleven errors presenting the precise issues, whether the filings of continuation statements as contemplated by sec. 47-9-403(3) T.C.A. are taxed by sec. 67-4102 Item S(b), and if so, whether the taxing act is constitutional when so applied.

Section 67-4102, Item S(b), provides, in part, as follows:

"Prior to the public recordation of any instrument evidencing an indebtedness, including but not limited to mortgages, deeds of trust, conditional sales contracts, financing statements contemplated by the uniform commercial code and liens on personalty, other

than on motor vehicles, there shall be paid a tax, for state purposes only of ten cents (10¢) on each one hundred dollars ($100) or major fraction thereof of the indebtedness so evidenced * * * In any case where the consideration or stipulation of indebtedness does not appear on the face of the instrument being offered for record, the recording official shall require a separate statement, to be made under oath, indicating the amount of indebtedness so secured. * * *''

The clear import of this statute is to impose a tax on the privilege of recording instruments, with certain enumerated exceptions, relating to secured transactions in real and personal property. The basis for the tax imposed is the amount of indebtedness evidenced by the instrument offered for recordation. Where the amount of the indebtedness does not appear on the face of the instrument, as in the case of financing statements, the statute provides a method for determining the amount of indebtedness upon which the tax can be based.

The financing statements referred to in the tax statute as those contemplated by the Uniform Commercial Code, are such security interests in personal property created by contract as are covered by sec. 47-9-102, 47-9-401, and 47-9-402 T.C.A.

Section 47-9-102 is a part of the U.C.C. Chapter titled, Uniform Commercial Code—Secured—Transactions. In comments to the official text the purpose of this chapter is stated to be: ''This Article (Chapter) sets out a comprehensive scheme for the regulation of security interests in personal property and fixtures. It supersedes existing legislation dealing with such security devices as chattel mortgages, conditional sales, trust receipts, factor's liens

and assignments of accounts receivable.'' The comment continues: ''The aim of this Article (Chapter) is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty.

''Under this Article (Chapter) the traditional distinctions among security devices, based largely on form, are not retained; the Article (Chapter) applies to all transactions intended to create security interests in personal property and fixtures, and the single term 'security interest' substitutes for the variety of descriptive terms which has grown up at common law and under a hundred-year accretion of statutes.''

Section 47-9-401 provides, in part, that a security interest such as that created by a financing statement (the formal requisites of which are contained in sec. 47-9-402), shall be filed in the office of the Secretary of State.

Section 47-9-403 T.C.A. provides, in part, that a filed financing statement may be effective for a period of five years from the date of filing, according to its terms. This statute also provides for continuation statements. As to this it provides that a continuation statement may be filed by the secured party within specified time periods; that such a continuation statement must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective; and upon timely filing of the continuation statement the effectiveness of the original statement is continued for five years after the last date to which the filing was effective, whereupon it lapses unless another continuation statement is filed prior to such lapse. This statute also

provides that succeeding continuation statements may be filed in the same manner.

By these means the Uniform Commercial Code provides for recordation of open-ended security agreements covering nonpossessory after acquired personal property, thereby enabling inventory financing where the amount of indebtedness secured at any given time varies with changing inventory collateral. See sec. 47-9-204 T.C.A. And continuation statements are an integral and essential part of the notice of filings contemplated by the Uniform Commercial Code to perfect security interests beyond a period of five years, covering inventory on hand and any new inventory added during the ensuing five years.

In an opinion of the office of the Attorney General of Tennessee, dated December 6, 1967, and addressed to Thomas D. Benson, Commissioner of Revenue of Tennessee, the subject of correlating the provisions of the Uniform Commercial Code with sec. 67-4102 Item S(b) was discussed in part as follows:

"It should be noted at the outset that the taxing item in question has been upon the statute books for several decades and that the nature and incidence of the tax has been well understood throughout this period. The tax has been consistently held to be upon the privilege of having recorded instruments evidencing a security interest in specific property, with the measure thereof being the amount of indebtedness so secured. The 1967 amendments do not alter concepts and do not purport to do so. They merely extend coverage of the tax to the recordation of security instruments by persons other than the County Register who receive them for recordation in accordance with law. The taxable incident very

clearly remains 'the public recordation of any instrument evidencing an indebtedness'. Upon its face this language necessarily implies an indebtedness in being at the time of recordation. Such was the construction accorded to the pre-existing statute and nothing appears in the statute as amended to suggest a different interpretation. It would therefore appear that the indebtedness comprising the measure of the tax cannot be held to include future indebtedness or indebtedness contingent upon the happening of some future event.

"The amended statute recites five illustrations of instruments within the contemplation of the taxing item. These are mortgages, deeds of trust, conditional sales contracts, and liens upon personalty, in addition to financing statements. The first four of these, as here listed, rather unmistakingly relate to and contemplate specific property in being in which the debtor has a present alienable interest.

"The intendment of the term 'financing statement' standing alone is of course much broader. It covers virtually every type of security interest in property, present and future. No means however is provided for the ascertainment of anything other than present interest in present property. Under the doctrine of *noscitur a sociis,* the indicated legislative intent was to confine the meaning of the term for tax purposes to such interests.

"What must be further borne in mind here is that the original scope of Item S(b) has in recent years been eroded without any expressed intention to do so by the enactment of the motor vehicle title statute and the Uniform Commercial Code. These statutes provide

new. and different methods and places for the recordation of certain types of security instruments. One of the manifest objects of the amendments to Item S(b) was to bring these instruments back within the scope of the popularly referred to 'mortgage tax.' When we view the new statute against this background, it seems clear that the legislative intent was to include within the scope of the tax only those financing statements setting forth security interests in property which would have been subjects of taxation under the original Item S(b). These are those statements which can fairly be said to be substitutes for mortgages, deeds of trust and conditional sales contracts.

"It is therefore the opinion of this office that financing statements are includable within the measure of the tax in question only when they undertake as security for a present indebtedness to state a present interest in specific property in which the debtor has a present alienable interest."

In a subsequent opinion letter dated March 7, 1969, and addressed to Commissioner Benson, continuation statements as well as financing statements, were further discussed, in part as follows:

"In my letter to you dated December 6, 1967, it was concluded that financing statements were includable within the taxing item in question where they represented substitutes for mortgages, deeds of trust or conditional sales contracts, or where they undertake to evidence security for a present indebtedness of a present interest in specific property where the debtor has a present alienable interest.

"The sample statement which you enclose purports to cover all present and future accounts and contract rights of the debtor. Insofar as the tax is concerned, it is the opinion of this office that it is applicable to such portion of the indebtedness secured as is presently (that is as of the date the statement is offered for recordation) in being. Of course, no present evaluation can be made of future indebtedness.

"As for continuation statements, I am constrained to the opinion that they stand upon the same footing as continuations of mortgages, deeds of trust, conditional sales contracts and liens upon personalty. The original recording of these are subject to the tax, but continuations are not except to the extent that they undertake to secure additional indebtedness incurred since the original filing."

On the basis of the foregoing the Commissioner of Revenue states his basic position with respect to this tax and its imposition on the filing of continuation statements as follows:

"The defendants' basic position, therefore, is that taxes on the filing of continuation statements are authorized and required by T.C.A. sec. 67-4102, Item S(b), and that the basis for the imposition of the tax is the amount of indebtedness secured at the time of the filing of a continuation statement. To the extent that the filings of the original financing statements were subject to the privilege tax prescribed by T.C.A., sec. 67-4102, Item S(b), the presumption against double taxation for the exercise of the same privilege would operate to exclude the filing of subsequent continuation statements for imposition of the

tax. Since the presumption against double taxation would preclude imposition of the tax on the filing of continuation statements only where and to the extent that the amount of indebtedness secured has previously served as a basis for the tax, T.C.A. sec. 67-4102, Item S(b) requires the levy of taxes on the filings of continuation statements where no taxes were levied on the filings of the original financing statements, or where new indebtedness has been incurred since the original filings to the extent of the new indebtedness.''

The International Companies' basic position is, of course, that the filing of continuation statements are not taxed by the tax statute and that the tax has been illegally collected for the several reasons mentioned in their assignments of error.

We agree with the Commissioner of Revenue that the tax was due and payable and affirm the decree of the Chancery Court.

■ In their first and tenth assignment of error complainants contend that a continuation statement is neither a ''financing statement'' nor an ''evidence of indebtedness'' and so no tax should be paid upon its filing.

This contention is in the teeth of the statute, sec. 67-4102 Item S(b) T.C.A., which taxes the public recordation of ''any instrument evidencing an indebtedness, including but not limited to * * * financing statements contemplated by the uniform commercial code * * *,''. Since the statute applies to the public recordation of any instrument evidencing an indebtedness, and a continuation statement evidences an indebtedness, and must be recorded to be effective, the tax statute clearly applies.

It is obvious that without the continuation statement the arrangement for security would be at an end after five years. But, that by means of the continuation statement, security is extended as to both new and old indebtedness for another five year period, and so is a new "evidence of indebtedness".

Complainants' second contention, that there is no firm and certain indebtedness on which the tax can be levied, since a continuation statement is merely a document evidencing the continuation of an existing and continuing security interest fluctuates over the period of financing of a dealer on the dealer's inventory, is, likewise, unsound. At any given time the indebtedness secured by this open-ended security arrangement can be ascertained. The tax statute fixes that time of ascertainment at the time the evidence of indebtedness is offered for recordation. This furnishes a certain basis for the assessment of the tax. The fact that, as is evident, inventory collateral may be greater or less from time to time and so the amounts secured vary, can furnish no basis for striking down a privilege tax which in express terms applies to this very situation; which situation is, itself, provided for by the Uniform Commercial Code.

We do not think that sec. 67-4102 Item S(b) is void for establishment of arbitrary and capricious classssifications. It is argued that since the statute does not impose a tax on financing statements covering motor vehicles, while applying the tax where farm equipment is covered, the whole statute is void for arbitrary and capricious classification contrary to Article 11, sec. 8 of the Constitution of Tennessee.

The only case cited by complainants is *Jack Cole Company v. MacFarland,* 206 Tenn. 694, 337 S.W.2d 453.

Not only does this opinion not apply, being concerned with the unconstitutionality of a particular privilege tax on the ground it was an income tax and so prohibited by Article 2, sec. 28 of the Constitution of Tennessee, the case more aptly could be cited for the appellees since therein it is recognized that Article 2, sec. 28, expressly provides ''* * * the Legislature shall have power to tax Merchants, Peddlers, and privileges, in such manner as they may from time to time direct.''

The legislature has in the tax statute under consideration directed the taxation of the recordation of particular instruments evidencing indebtedness, and has excluded others. This lies within the prima facie power of the legislature under the constitutional permission to tax privileges as it sees fit. See *Camden Fire Ins. Assn. v. Haston,* 153 Tenn. 675, 284 S.W. 905; *Seven Springs Water Co. v. Kennedy,* 156 Tenn. 1, 299 S.W. 792, 56 A.L.R. 496; *Humphries v. Carter,* 172 Tenn. 392, 112 S.M.2d 833; *Hooten v. Carson,* 186 Tenn. 282, 209 S.W.2d 273.

The right of taxation is inherent in this state. It is a prerogative essential to the perpetuity of the government. The claimant who would say a tax statute is beyond the power of the legislature because it contravenes a constitutional provision must put his finger on the express constitutional provision, and the contravention must be clear. *Vertrees v. State Board of Elections,* 141 Tenn. 645, 214 S.W. 737. While Article 11, sec. 8 is pointed out as being offended no good reason is given and no authority in point is cited.

We point out it would be our duty to elide the provision objected to rather than to strike down the taxing statute should the complainants-appellants prevail in their argument. Because, the evident, primary intent of the statute is to tax "any instrument evidencing an indebtedness" while the exclusion is a secondary consideration.

The question of the effect of the unconstitutional exemption of a class of property on an omnibus tax statute was discussed in *McLaughlin v. Chadwell, Collector et al.*, 54 Tenn. 389, 399:

"What, however, would be the result should the Legislature see proper to exempt property from taxation, in violation of the spirit of the Constitution above quoted, we do not say. Would it result that all the tax imposed by the act upon other property would therefore be illegal, and not susceptible of collection? This would be to give an unusual effect to an unconstitutional law,—that because certain property is improperly exempted, therefore no tax can be collected from other property that is properly taxed. Would not a more reasonable view be that the part of the law providing for the improper exemption should be declared void.

"If the argument be sound that the exemption of these bonds was a violation of the condition in the act of Congress upon which the right to tax national bank stock is founded, it would seem to follow that the exemption is also in violation of that part of our State Constitution above quoted, requiring equal taxation; and if this be true, then it would result that the exemption was in violation of the Constitution, and should have been disregarded altogether. And this

would certainly be more rational than to defeat the entire tax law because of the fact that a part of it is unconstitutional.''

Though this proposition is dealt with only theoretically in *McLaughlin*, the resolution of the problem there suggested is sound and has been followed in several cases since. In *State v. Scott*, 98 Tenn. 254, 39 S.W. 1, 36 L.R.A. 461, it was held the unconstitutionality of a clause of the Revenue Act of 1897 did not affect any other part of the act. *State National Bank v. City of Memphis*, 116 Tenn. 641, 94 S.W. 606, 7 L.R.A.,N.S., 663, held that the unconstitutionality of a provision in an act allowing the deduction of the value of state bonds from the value of shares of corporate stocks in assessing the shares of stock would not affect the validity of the provision of the tax act for their assessment as a whole. In *Ogilvie v. Hailey*, 141 Tenn. 392, 210 S.W. 645, it was held that even though a penalty provided for non-payment of privilege tax on pleasure automobiles should be held to be unconstitutional as excessive, it would not vitiate the remainder of the tax act. In *Corn v. Fort*, 170 Tenn. 377, 95 S.W.2d 620, 106 A.L.R. 647, it was held that the inclusion of partnerships in a classification of an act imposing privilege taxes on various forms of business endeavors, while in itself unconstitutional, would not affect the validity of the balance of the act. And in *Logan's Supermarkets, Inc. v. Atkins*, 202 Tenn. 438, 304 S.W.2d 628, it was held that the portion of the act which increased the amount of privilege tax imposed on trading stamp companies was not voided by the unconstitutional classification of merchants who used trading stamps as a trade incentive.

The Commissioner and Secretary of State argue that the exclusion under attack is not arbitrary, capricious

and unreasonable, because there is a comprehensive system of motor vehicle registration, sec. 59-301 et seq., T.C.A., upon which the exclusion could have been based. While this is true, we are not required to sustain the validity of this particular exclusion in this case, we are only required to decide whether or not its presence in the tax statute sec. 67-4102 Item S(b) T.C.A. invalidates the entire act, and we hold that it does not.

■ The fourth assignment of error, that the tax act is drafted so as to permit double taxation upon the same event is without merit. Revenue statutes are to be construed, in the absence of express words disclosing a contrary intent, against an intention to subject the same business to double taxation. *Commercial Standard Ins. Co. v. Hixson,* 175 Tenn. 239, 133 S.W.2d 493; *State v. Louisville & N. Ry. Co.,* 139 Tenn. 406, 201 S.W. 738; *Bell v. Watson,* 71 Tenn. 328. This same general proposition is stated slightly differently in *Williams v. Massachusetts Mutual Life Ins. Co.,* 221 Tenn. 508, 427 S.W.2d 845, where it is said that there is a presumption against the legislative intent to enact statutes resulting in double taxation.

On top of this there was no double taxation or threat of double taxation. To the contrary only one tax was collected and it was collected under opinion letters of the Attorney General which take the subject of possible double taxation into consideration and instruct the commissioner how to avoid this happening.

While it is well settled that revenue statutes are to be liberally construed in favor of the taxpayer and strictly construed against the taxing authority, *Memphis Peabody Corp. v. MacFarland,* 211 Tenn. 384, 365 S.W.2d 40,

it is equally clear that the plain import of the language of the act is to be given effect, *United Inter-Mountain Telephone Co. v. Moyers,* 221 Tenn. 246, 426 S.W.2d 177, and that the legislative intent to tax must not be thwarted by the strict construction rule. See *Tennessee Products & Chemical Corp. v. Dickinson,* 195 Tenn. 63, 256 S.W.2d 709.

So, while "continuation statements" are not specifically named in the tax statute, they are, as we have held, "instruments evidencing an indebtedness", having in general the same security purpose as "financing statements" (which latter are expressly subjected to the recordation tax), so that under the strictest construction of the tax statute, the privilege tax would apply.

■ For reasons we have heretofore mentioned we disagree with complainants-appellants' contention that the tax statute is so vague and uncertain in its terms that it is void. We find nothing vague and uncertain in the statute terms. It specifically defines the classes of instruments to which the privilege tax is applicable and makes clear and definite provision for the ascertainment of the base of the tax. The assignment in this regard is without merit.

■ Likewise, the assignment that the present statute is void, because it is broader than the caption of the act originating the tax, is without merit. It is fundamental that upon the incorporation of this tax act into Tennessee Code Annotated, and the subsequent amendment of that Code by reference to the Code section the relationship of the amendments to the original caption are not available for an attack on the statute. Defects in the captions of the original and amendatory acts, if any, are

cured through codification adopted by a codifying act. *Keaton v. State,* 212 Tenn. 690, 372 S.W.2d 163. The legislative history of this tax act is set out parenthetically under sec. 67-4102 T.C.A. Item S(b), but this information is not a part of the Tennessee Code Annotated so as to bring forward the old caption. *City of Memphis v. Yellow Cab,* 201 Tenn. 71, 296 S.W.2d 864.

The ninth assignment of error, that the judgment of the chancery court is contrary to both the law and the weight of the evidence is too general to consider. So for this and for all the reasons we have heretofore mentioned for sustaining the tax it is overruled.

The assignment of error that there was no taxable event upon which the tax could be imposed is without merit. For reasons heretofore given sustaining the tax, it is overruled.

For the reasons stated all assignments of error are overruled, and the decree of the Chancellor is affirmed.

DYER, CHIEF JUSTICE, and CHATTIN and CRESON, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.