Joe C. CARR, Secretary of State, and Jayne Ann Woods, Commissioner of Revenue of the State of Tennessee, Appellants-Defendants,

v.

CHRYSLER CREDIT CORPORATION, Appellee-Plaintiff.

Supreme Court of Tennessee.

Aug. 30, 1976.

Everett H. Falk, Deputy Atty. Gen., Nashville, for appellants-defendants; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

Charles K. Wray, Jay S. Bowen, Nashville, for appellee-plaintiff; Bass, Berry & Sims, Nashville, of counsel.

## OPINION

HARBISON, Justice.

This case presents for decision the scope of an exemption from the state transfer tax on the recording of mortgages, deeds of trust and other evidences of indebtedness.

The transfer or recordation tax is authorized by T.C.A. § 67–4102, Item S(b).

The question at issue is whether or not financing statements on inventories of automobiles, financed under a "floor-plan" arrangement, are exempt from the recordation tax. The chancellor held the exemption applicable, and permitted appellee a recovery of transfer taxes which it had paid under protest upon the recordation of a number of financing statements in the office of the Secretary of State. The State officials charged with the collection and administration of the tax in question have appealed, and the parties have stipulated that the determinative question is whether the language of the statute exempts from taxation financing statements contemplated by the Uniform Commercial Code covering motor vehicle inventory as collateral.

Since 1937 the State has levied a privilege tax upon the recordation of any instrument evidencing a security interest in real or personal property. Prior to 1967 there was no specific reference to instruments evidencing a lien on motor vehicles and, apparently, not until an amendment of the taxing statute in 1968 was there ever any question but that the tax was due and payable upon the recording of an instrument evidencing a security interest in motor vehicles, whether in an individual automobile or in an inventory of automobiles.

In 1967 the statute was substantially rewritten, and there appears to be no dispute between the parties but under the language of the 1967 statute both financing statements on inventory and evidences of indebtedness against individual automobiles were subject to the transfer tax. The 1967 statute contained no exemptions or exceptions with respect to motor vehicles, and it expressly provided:

"This tax shall be paid to and collected by County registers, the Secretary of State, the division of motor vehicles of the department of revenue, and any other official who may receive the instrument

for recordation in accordance with the laws of the state . . . " Tenn.Pub. Acts 1967, ch. 178.

By Chapter 483 of the Public Acts of 1968, certain exemptions from the tax were provided, and it is the scope of one of these exemptions which is involved here.

Following the 1968 amendment, insofar as here pertinent, the taxing statute provided:

"Prior to the public recordation of any instrument evidencing an indebtedness, including but not limited to mortgages, deeds of trust, conditional sales contracts, financing statements contemplated by the uniform commercial code and liens on personalty, *other than on motor vehicles,* there shall be paid a tax, for state purposes only, of ten cents (10¢) on each one hundred dollars ($100) or major fraction thereof of the indebtedness so evidenced. . . . This tax shall be paid to and collected by county registers, the secretary of state, and any other official who may receive any instrument, *other than for liens on motor vehicles in accordance with the motor vehicle title law of this state,* for recordation in accordance with the laws of this state, and registration is forbidden until such tax has been paid. The incidence of the tax herein provided is declared to be upon the holder or owner of the indebtedness, evidenced by the instrument offered for recordation. It shall not however apply with respect to the first two thousand dollars ($2,000) of the indebtedness." T.C.A. § 67–4102, Item S(b) (emphasis added).

It is stipulated between the parties that from the time of the enactment of the 1968 amendment until June 1974:

" . . . it was the position of Defendant Joe C. Carr and the predecessor in office of Jayne Ann Woods that recordation of financing statements covering the floor-planning of motor vehicles was not subject to the tax imposed by T.C.A. § 67–4102, Item S(b)."

It is further stipulated between the parties:

"Since at least October 8, 1974, it has been the position of Defendants Joe C. Carr and Jayne Ann Woods, or her predecessor in office, that the public recordation of financing statements covering the floor-planning of motor vehicles is subject to the tax provided in T.C.A. § 67–4102, Item S(b), and defendant Joe C. Carr has insisted on the payment of such tax as a condition to the recordation of such financing statements."

It is further stipulated between the parties that the altered position of the taxing authorities did not result from any change in the wording of the statute, but constituted a change in the construction and interpretation of the officials based upon legal advice and later supported by an opinion of the State Attorney General, a copy of which is in the record.

It is undisputed between the parties that the 1968 amendment clearly contemplated the exemption of certain types of instruments of indebtedness covering motor vehicles as collateral. There can be no question, from the wording used, that documents evidencing security interests in individual automobiles as consumer goods, which are filed with the Division of Motor Vehicles,[1] are now exempt, whereas they were not exempt prior to the 1968 amendment. It is the insistence of the appellants that it was the intention of the General Assembly to limit the exemption to documents indicating liens on individual automobiles, and not to embrace within the exemption financing statements covering motor vehicles as inventory, which are filed with the Secretary of State [2] and which are defined as inventory in the Uniform Commercial Code.[3]

The case has been briefed and argued before the Court in an unusually thorough manner on behalf of both parties. Each of the parties points to the language used in the statute, the punctuation, and to rules of

1. T.C.A. §§ 59–324 *et seq.*

2. T.C.A. § 47–9–401.

3. T.C.A. § 47–9–109(4).

statutory interpretation or construction, supporting their respective contentions.

On behalf of the appellee, it is urged that taxing statutes should be liberally construed in favor of the taxpayer and all doubt should be resolved against the taxing authority.[4] It is further urged that the scope of taxation should not be extended by implication beyond the clear meaning of the language used.[5] The taxpayer particularly insists that if the statute be deemed ambiguous, then the administrative construction and interpretation thereof, under which the exemption was deemed to include financing statements for a period of some six years, should be given great, and indeed almost controlling, weight.[6]

On the other hand, appellants point out that the exemption in question is set off by commas, apparently having as its antecedent the words "liens on personalty", and that the second sentence quoted above clearly provides that the tax shall be paid to and collected by officials on all instruments received for recording "other than for liens on motor vehicles in accordance with the motor vehicle law of this state . . . ."

Appellants further point to many cases reported in this state to the effect that exemptions from taxation are to be narrowly construed,[7] and that the scope of an exemption is at issue here, rather than the scope of taxation. They further point to many cases holding that taxing authorities and other public officials are not subject to rules of estoppel, and that, in the discharge of their public duties and in carrying out the public business, they are free to make further studies and reinterpretations of the statutes which they are called upon to administer.[8]

The taxpayer cites and relies heavily upon language used by this Court in the case of *Gallagher v. Butler,* 214 Tenn. 129, 378 S.W.2d 161 (1963), in which great weight was given to the administrative interpretation of a taxing statute, and the Court pointed out the necessity for uniformity in administration of tax laws. In the course of its opinion, the Court stated:

"Members of the bar, the accounting profession, and the general public have relied upon these rulings as being correct. To effect a change without affirmative legislative action appears to us to be inequitable and against the established policy of this State." 214 Tenn. at 142, 378 S.W.2d at 166.

We are in general agreement with this statement and with the cases cited in support thereof. Nevertheless, it is possible for officials charged with the interpretation and administration of revenue laws to change their interpretations and to re-examine them, despite previous interpretation and construction extending over a period of many years.

A recent example of this principle is found in the case of *Book Agents of the Methodist Episcopal Church, South, v. State Board of Equalization,* 513 S.W.2d 514 (Tenn.1974). There, the Supreme Court, in three separate opinions, held at least partially taxable the properties of two religious publishing houses which had enjoyed almost complete exemption from taxation over a period of many decades. One of the institutions had been established in 1854, and its property had been deemed substantially exempt through the year 1969. The language of the statutes granting the exemptions had not been changed for more than thirty years prior to the assessment year in question, and in previous legal proceedings it had been stipulated by taxing authorities that the operations of at least one of the

---

4. *Memphis Peabody Corp. v. MacFarland,* 211 Tenn. 384, 365 S.W.2d 241 (1963).

5. *Sloan v. City of Columbia,* 144 Tenn. 197, 232 S.W. 663 (1920).

6. *New England Mut. Life Ins. Co. v. Reece,* 169 Tenn. 84, 83 S.W.2d 238 (1935).

7. *Tennessee Blacktop, Inc. v. Benson,* 494 S.W.2d 760 (Tenn.1973); *Phillips & Buttorff Mfg. Co. v. Carson,* 188 Tenn. 132, 217 S.W.2d 1 (1949).

8. *Ownbey v. Butler,* 211 Tenn. 366, 377, 365 S.W.2d 33 (1963); *Esso Standard Oil Co. v. Evans,* 194 Tenn. 377, 250 S.W.2d 569 (1952).

institutions entitled it to the exemption. Nevertheless, in only one of the three opinions filed by this Court was the previous construction and interpretation of the statute given any consideration whatever. In a concurring opinion by Special Justice Leech, *Gallagher v. Butler, supra,* and its supporting authorities were cited and relied upon. Two members of the Court, however, deemed the statute in question to be "unambiguous", so that prior interpretation was not held to be entitled to any weight, and these members, together with the concurring justice, reversed an interpretation by the Court of Appeals and reinstated the decision of the chancellor, granting a partial exemption. Two other members of the Court felt that the operations of the two institutions in question were taxable under the statute, and felt that legislative intent, rather than prior interpretation or construction, was controlling. These members of the Court felt that the exemption should be denied entirely, despite the fact that it had been recognized and allowed for much longer than the six-year period involved in the present case.[9]

■ We, therefore, feel that we are obligated to construe the statute in question according to the legislative intent, as best it can be ascertained from the words used. Prior administrative interpretations and rules of statutory construction are merely aids in attempting to arrive at the legislative intent, and no one of them is controlling.

■ It is obvious from the fact that the taxing officials themselves have reached two different interpretations of the identical statute, that the statute cannot be said to be free from doubt or ambiguity. In the first sentence of the amended statute, the exemption is phrased in the words "other than on motor vehicles." This certainly could be construed to include financing

statements as well as lien documents pertaining to individual automobiles. In the second sentence, however, the exemption is again referred to and more clearly defined in connection with the directions given to collecting officials. This sentence is as follows:

"This tax shall be paid to and collected by county registers, the secretary of state, and any other official who may receive *any instrument, other than* for liens on motor vehicles in accordance with the motor vehicle title law of this state . . . ." (Emphasis added).

The Secretary of State, of course, does not receive for recordation liens on certificates of titles on individual motor vehicles. These are filed with the Division of Motor Vehicles, under the motor vehicle title law.[10] Financing statements covering inventories of vehicles, like other inventories, are filed with the Secretary of State, and inventories of automobiles are not governed by or controlled by the motor vehicle title law of the state.

We, therefore, are constrained to the view that the current interpretation of the taxing law made by the state officials is the correct one, and that the exemption should not be extended to include financing statements on automobile inventories.

The taxpayer cites and relies upon the case of *International Harvester Co. v. Carr,* 225 Tenn. 244, 466 S.W.2d 207 (1970), in which continuation statements of security interests were held to fall within the purview of the recordation tax. In the course of that opinion the Court referred to the then current interpretation of the exemption in question, which included financing statements on automobiles but did not exempt financing statements on inventories of farm equipment and other kinds of equipment. The Court indicated that the exemption of financing statements on auto-

9. For similar holdings see the cases cited in note 8, *supra.*

10. T.C.A. §§ 59–324, *et seq.* A reason suggested by the State for exempting lien filings on individual vehicles is that these generated little revenue compared to the cost of administra-

tion, since the first $2,000.00 of indebtedness is not taxed. There is nothing in the stipulations establishing this contention, however, so that we can only regard it as argument rather than as proven fact.

mobiles probably would be constitutionally permissible, but indicated that even if not, and if such an exemption were deemed unconstitutional, the exemption would be merely elided, rather than having the effect of destroying the taxing statute in its entirety.

Other than illustrating the prior interpretation of the statute in question, which prior interpretation is readily admitted and indeed is stipulated by the taxing authorities, the *International Harvester* case is not authority for any question at issue in the present case, nor does it present any controlling interpretation of the statutory language here in issue.

The judgment of the trial court, allowing recovery of the taxes paid under protest, is reversed and the suit is dismissed at the cost of appellees.

COOPER, C. J., and HENRY and BROCK, JJ., concur.

FONES, J., dissents.

FONES, Justice (dissenting).

I would affirm the learned Chancellor.

I have no difficulty interpreting the statute, on its face, to exclude motor vehicles, whether the lien be noted on a certificate of title or a UCC financing statement.

The reasoning process that strips a motor vehicle of its identity, as such, for the purpose of the exemption in T.C.A. § 67–4102, Item S(b) because by UCC definition it becomes inventory if held by a dealer and is described on a financing statement instead of a certificate of title, does not, in my opinion, lend any support for the statutory interpretation urged by the Commissioner of Revenue.

The majority opinion says that in the second sentence of the statute the exemption is more clearly defined in connection with the directions given to collecting officials. Again, this observation is based on a reasoning process with which I do not agree. The excluded official is the person in charge of recording motor vehicle certificates of title as he clearly should be. The

Secretary of State receives for recording all financing statements and could not be excluded regardless of the status of inventories of automobiles.

I agree with the comment in the majority opinion found in the paragraph immediately following the quotation from *Gallagher v. Butler, supra,* but I do not agree that the decision in *Book Agents of the Methodist Episcopal Church, South, v. State Board of Equalization, supra,* has any significance whatever on the decision of this case. Previous construction and interpretation of the statute there involved, and more specifically the application of the statute administratively and judicially, simply does not compare with stipulated fact, in this case, that the Commissioner of Revenue of Tennessee and the Secretary of State took the position, for the first six (6) years immediately following the 1968 amendment of the statute, " . . . that recordation of financing statements covering floor planning of motor vehicles was not subject to the tax imposed by T.C.A. § 67–4102 Item S(b)." Furthermore, as I read the opinions, four (4) members of that Court did not consider the principle of *Gallagher v. Butler, supra,* as having any significance in the determination of the issues in that case.