JESSIE HARRIS

*v.*

STATE OF TENNESSEE.

(*Knoxville*, September Term, 1960.)

Opinion filed December 9, 1960.

JOHN R. JONES, H. DENNIS ERWIN, Erwin, for Jessie Harris.

THOMAS E. FOX, Assistant Attorney General, for the State.

MR. JUSTICE FELTS delivered the opinion of the Court.

Plaintiff in error was convicted and fined $250 upon the charge that he "did unlawfully and knowingly possess a quantity of gambling devices, to wit: seven hundred (700) tip boards and a quantity of tips to the grand jury unknown, contrary to Tennessee Code Annotated section 39-2034 (4)." He insists that there is no evidence to support the verdict.

It appears he operated a place of business in Erwin, Tennessee, where he was licensed to sell beer, among other things. Clayton Webb, a constable, went before a Justice of the Peace and made oath that he was informed that plaintiff-in-error had a quantity of "white

liquor'' on his premises, and obtained a warrant to search them. Constable Webb, another constable, and agents of the Tennessee Alcohol Tax Unit searched the place but found no liquor.

None of the officers testified except Webb. He said that he found behind the counter ''two boxes of tip boards, about six or seven hundred, of different sizes, some with tips pulled off the boards''; but that all of them were in boxes. He also said he ''was not familiar with this type of board.'' There was no evidence that any of these things were actually being possessed or used for gambling.

The pertinent part of subsection (4), section 39-2034 of Tennessee Code Annotated, on which this indictment was based, is in these words:

''Whoever knowingly owns, manufactures, possesses, buys, sells, rents, leases, stores, repairs or tranports any gambling device, or offers or solicits any interest therein, whether through an agent or employee or otherwise, shall be guilty of a misdemeanor and fined not more than one thousand dollars ($1,000) and in the discretion of the court imprisoned in the county jail or workhouse for some period of time less than one (1) year * * *.''

This subsection does not define the phrase ''gambling device''; but for such definition, it must be read with subsection (4), sec. 39-2033, T.C.A., since they are both part of Chapter 234, Public Acts, 1955, as amended by Chapter 406, Public Acts, 1957. Subsection (4), sec. 39-2033, is as follows:

''(4) 'Gambling device' means any article, device or mechanism by the operation of in any place in which

a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance; any article, device or mechanism which, when operated for a consideration does not return the same value or thing of value for the same consideration upon each operation thereof; any device, mechanism, furniture, fixture, construction or installation designed primarily for use in connection with professional gambling; and any subassembly or essential part designed or intended for use in connection with any such device, mechanism, furniture, fixture, construction or installation, but pinball machines shall not be deemed to be included in this definition."

■ The above quoted subsections are part of our gaming statutes (T.C.A., secs. 39-2001—39-2037 (1932 Code secs. 5250-5252, 11275-11296)), or law for suppression of gambling; and they must be taken *in pari materia* with such statutes, and construed upon their own words read in the light of the established construction heretofore given such statutes. *Cheatham County v. Murff,* 176 Tenn. 93, 103, 138 S.W.2d 430, 433; *Burks v. State,* 194 Tenn. 675, 681, 254 S.W.2d 970, 972.

■ By the term "device," as generally used in statutes against gambling, is meant the "tangible means, instrument, contrivance, or thing with or by which money may be lost or won, as distinguished from the game itself" (24 Am.Jur., Gaming and Prize Contest, sec. 31, p. 420). *Cleek v. State,* 189 Tenn. 302, 304, 225 S.W.2d 70, 71; *Van Pelt v. State,* 193 Tenn. 463, 469, 246 S.W.2d 87, 89.

542

■ Since there are any devices which may be used either for gambling or for other purposes innocent and lawful, the mere possession of such a thing is not a violation of our gaming statutes; but, to make it such, there must be proof as to its condition, location, or use, to show it is being possessed or used for the purpose of gambling. *Cleek v. State,* supra; *Van Pelt v. State,* supra; *Burks v. State,* supra.

Thus, in the Cleek case (189 Tenn. 302, 304, 225 S.W.2d 71) it was held that mere possession of "a punch board, some tip boards and baseball tickets," would not support a conviction for "unlawfully keeping" any "device for gaming" (1932 Code sec. 11276, now T.C.A. sec. 39-2002), or for unlawfully possessing "any device whatever for the enticement of any person to gamble" (1932 Code sec. 5250, now T.C.A. sec. 39-2006).

In the Van Pelt case, the devices were policy slips and pads with numbers on them; and it was said that "these things *could not be considered as a gambling device for enticement of a person to play or gamble at, in or of themselves,"* but, coupled with evidence that they were actually being so used, they were sufficient to support a conviction (italics ours) (193 Tenn. 468, 246 S.W.2d 89).

In *Burks v. State,* supra, (194 Tenn. 675, 254 S.W.2d 971) the charge was that Burks "did unlawfully keep certain gambling devices, or devices for gaming, to-wit: about 12 slot machines." He had some old slot machines stored in a barn. The judge told the jury that if they found he had the machines and they were gambling devices, he would be guilty, even though they were not being used for the purpose of gambling.

This Court held this was error and the judge should have charged the jury that it was for them to find upon all the circumstances whether the machines were gambling devices, and, if so, whether they were being used for gambling or enticing persons to gamble. In this connection, Mr. Justice Gailor, for the Court, said:

"As this offense was charged, any small merchant in the State who had for sale a deck of cards, would be subject to a term in jail; and any citizen or householder who had in his possession and home a pair of dice for a nursery or parlor game, would be subject to like punishment. In our view, this was not the result intended by the Legislature, and the legislative purpose was not the absolute prohibition of the keeping or possession of these devices, but the suppression of gambling."

As we have seen, subsection (4), above quoted, in substance defines a "gambling device" as any article or device *"by the operation of [which] in any place* in which" money or anything of value may be won or lost by the element of chance; or any such device which *"when operated* for a consideration does not return the same value or thing of value for the same consideration"; or any "device," "furniture" or "installation *designed primarily for use* in connection with professional gambling"; or any "subassembly" or "part designed or intended for use in connection with any such device," except pinball machines. (italics ours)

Thus, the prominent idea in these definitions of a gambling device is that it is a device in *"operation"* or in *"use"* for the purpose of gambling. This idea is in line with the legislative purpose of our gambling statutes, which is "not the absolute prohibition of the keeping or

possession of these devices (which may be used for gambling or for other purposes that are innocent and lawful), but the suppression of gambling" (194 Tenn. 682, 254 S.W.2d 973); and this seems to be the intent of subsection (4).

■ In the case before us, since there was no evidence, testimonial or circumstantial, that these tip boards and tips were gambling devices or were possessed or used for the purpose of gambling, the verdict is without support. The judgment is reversed and the case remanded to the Circuit Court for a new trial.