ELMER KEATON

*v.*

STATE OF TENNESSEE

372 S.W.2d 163.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

W. E. BADGETT, Knoxville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for the State.

MR. JUSTICE DYER, delivered the opinion of the Court.

On October 10, 1962 local officers in Knox County obtained John Doe search warrants and under this authority searched the premises located at 2704 and 2706 Greenway Drive in Knox County finding in the basement of each several slot machines and race horse machines. The criminal charges growing out of these searches against defendant Elmer Keaton were dismissed by the Trial Judge due to defective descriptions in the warrants. These machines were destroyed by order of the Trial Court and some of them were found to contain money the total sum being $1,336.25.

On February 27, 1963 Elmer Keaton filed his petition requesting the return of the money found in these machines. The Trial Judge overruled the petition ordering the money to be confiscated and divided between the State and County in accordance with Section 39-2034(3), T.C.A.

From this order a writ of certiorari and a writ of supersedeas were granted at the direction of the Honorable Hamilton S. Burnett, Chief Justice of this Court. The petitioner Keaton in the Trial Court and in this Court states his position as follows:

(1) Chapter 234, Public Acts, General Assembly, State of Tennessee, for the Year 1955, Section 39-2031, et seq. T.C.A., —Gaming — is invalid because it was not constitutionally enacted.

(2) Under the facts stipulated the money was not "at stake or displayed in or in connection with professional gambling or gambling device" as required by statute to justify the confiscation of the same.

Chapter 234, of the Public Acts for 1955 was passed by the legislature as House Bill No. 231. Petitioner contends House Bill No. 231 as signed by the Speakers and sent to the Governor for his approval was in fact not the same as House Bill No. 231 passed by the legislature, since in the process of passage required by Section 18, Article 2 of our Constitution this Act was amended, and these amendment were not engrossed into this House Bill. Such action would result in the Speakers signing a different bill from that passed by the legislature, and would result in a void law. *City of Nashville v. Browning,* 192 Tenn. 597, 241 S.W.2d 583. As hereafter shown in this

opinion it will not be necessary for us to pass upon this contention of petitioner.

▌ The legislature by Chapter 6 of the Public Acts for 1955 adopted an official code designating same as, "Tennessee Code Annotated" effective February 2, 1955. Section 1-101 thereof creates a Code Commission and the sections immediately following designate certain duties and functions of this Commission. One of the functions of this Commission is to take general statutes passed by the legislature and codify them to become a part of the Tennessee Code Annotated. In so doing the Commission is authorized to make certain ministerial changes set out in Section 1-108. Chapter 234 of the Public Acts for 1955 as signed by the Speakers and the Governor became effective March 21, 1955. The Code Commission under their authority codified Chapter 234 to become a part of the Tennessee Code Annotated as Section 39-2031 et seq. (The codifying of this chapter by the Code Commission would not relieve same from its attack here, that the act signed by the Speakers was not in fact the same as passed by the legislature.

▌ Sections 39-2031 et seq. being the codification by the Code Commission of Chapter 234, Public Acts 1955 along with several other Public Acts of 1955 was enacted as law by the legislature as Chapter 1 of the Public Acts for 1957. The passage of Chapter 1 is an act of the legislature and would cure any defect in the passage of Chapter 234 from and after the effective date of Chapter 1, which was January 11, 1957.

It is not claimed Chapter 1, Public Acts of 1957 was not a valid enactment of the legislature, and since the actions resulting in the case at bar arose some time after the

effective date of Chapter 1, then the question of the validity of Chapter 234 of the Public Acts for 1955 is moot.

Petitioner argues these machines could not be construed as, "gambling devices" within the meaning of Section 39-2033(4), T.C.A., since they were not "in use", or "in operation", or being "maintained." In support of this position they cite the recent case of *Harris v. State,* 207 Tenn. 538, 341 S.W.2d 576. In this case the Court speaking through Mr. Justice Felts in regard to subsection (4) of Section 39-2033, T.C.A. said:

"As we have seen, subsection (4) above quoted, in substance defines a 'gambling device' as any article or device 'by the operation of [which] in any place in which' money or anything of value may be won or lost by the element of chance; or any such device which 'when operated for a consideration does not return the same value or thing of value for the same consideration'; or any 'device,' 'furniture' or 'installation designed primarily for use in connection with professional gambling'; or any 'subassembly' or 'part designed or intended for use in connection with any such device,' except pinball machines.

"Thus, the prominent idea in these definitions of a gambling device is that it is a device in 'operation' or in 'use' for the purpose of gambling. This idea is in line with the legislative purpose of our gambling statutes, which is 'not the absolute prohibition of the keeping or possession of these devices (which may be used for gambling or for other purposes that are innocent and lawful), but the suppression of gambling.' ([*Burks v. State,* 194 Tenn. 675, 254 S.W.2d 971] 194 Tenn. 682, 254 S.W.2d 973); and this seems to be the

intent of subsection (4)." 207 Tenn. 538, 341 S.W.2d 579.

There is a factual difference between the case at bar and *Harris v. State*, supra. The Harris case involved an indictment under Section 39-2034(4) for knowingly possessing a quantity of gambling devices, to-wit. "(700) tip boards and a quantity of tips." These boards were found by officers in boxes behind a counter and there was no evidence they were actually being possessed or used for gambling. The only officer who testified stated in regard to the nature or uses of these boards that he, "was not familiar with this type of board." In other words under the record in the Harris case these boards could be used for gambling or could be used for other purposes innocent and lawful. The factual situation in the case at bar is different.

■ In the case at bar under this record officers found 72 slot and race horse machines in the basements of two adjoining buildings. These machines apparently were in storage, and not in operation or openly displayed to the public. The money at issue in this case was found on the inside in what is known as the money tubes in the slot machines. This type of machine is played by inserting a coin of the realm into a slot and pulling the handle, which sets in motion wheels or bands inside the machine visible to the player on which are painted symbols. If these wheels stop on certain designated symbols the machine returns to the player more coins of the same value than used by the player to operate the machine; or if these wheels stop on other symbols the machine returns nothing to the player. Such a machine is not only designed primarily for use in gambling, but in fact has no

other purpose either innocent or lawful. Such a machine is a gambling device within the meaning of Section 39-2031 (4), T.C.A.

Section 39-2034, T.C.A. makes gambling devices subject to seizure and forfeit, and subsection (3) thereof makes all money at stake or displayed in or in connection with any gambling device subject to such seizure and forfeit. In the very similar case of *Dorrell v. Clark*, 90 Mont. 585, 4 P.2d 712, 79 A.L.R. 1000 the Court said:

"It is clear from the record and from the nature of the devices seized that the money was within the mechanism of the slot machines and was not disclosed until the order for their destruction was obeyed. Clearly, these were what is known as 'money machines' and were operated by placing a coin in a slot and manipulating a lever; when the coin became a part of the device for operating the machine and if, perchance, the operator was lucky, it released other coins from the internal workings of the machine and expelled them therefrom. Under such circumstances the coins, and all of them, were as much a part of the gambling device as was the lever, or dials, or slot; the machine could not be operated without their use, and the machines, as they were when seized by the sheriff, could not 'pay' except for the coins therein." 79 A.L.R. 1000.

Coins of the realm when placed in this type of slot machine becomes a necessary part of the machine, and would be subject to seizure and forfeit under Section 39-2034, T.C.A.

Judgment affirmed.