# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 13, 2004 Session

## STATE OF TENNESSEE v. DANIEL W. LIVINGSTON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-625      Cheryl Blackburn, Judge**

---

**No. M2004-00086-CCA-R3-CD - Filed March 15, 2005**

---

This is a direct appeal as of right from a conviction on a jury verdict of evading arrest by motor vehicle with risk of death or injury. The trial court determined that the Defendant, Daniel Livingston, was a career offender and sentenced him to twelve years for the felony evading arrest conviction and time served for a misdemeanor resisting arrest conviction.  On appeal, the Defendant argues five issues: (1) the evading arrest statute is unconstitutional because it violates the "Caption Clause" of the Tennessee Constitution; (2) the evidence is insufficient to sustain the conviction for felony evading arrest with risk of death or injury; (3) the trial court erred in sentencing the Defendant as a career offender because the State's notice of enhanced punishment was defective; (4) the Defendant received ineffective assistance of counsel at trial; and (5) the Defendant's Sixth Amendment right to a jury trial was violated because the trial court made findings of fact for sentencing purposes.  We affirm the Defendant's conviction, but modify the sentence to four years to be served as a Range I standard offender.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Charles Walker, Nashville, Tennessee, for the appellant, Daniel W. Livingston.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Brett Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTS

The conviction challenged in this appeal stems from an automobile chase through the streets of central Nashville in September of 2001.[1]  The record on appeal reveals that the Defendant "borrowed" a white 1994 Jeep Cherokee from an acquaintance in July of 2001, but failed to return the vehicle as promptly as the owner desired.  The owner reported the theft of her Jeep on July 28, 2001. On September 20, 2001, at approximately 6:30 in the evening, the owner of the stolen vehicle (the victim) telephoned the Nashville Metro Police and reported that she had just observed her missing Jeep drive past her house.  The victim's boyfriend followed the Jeep in his own vehicle, and reported its location to the Metro Police via his cell phone.   The Metro dispatcher reported the sighting of the stolen vehicle--including it's physical description, licence plate number, current location, and the fact that a private citizen was following it--over the police radio.

Within minutes of the radio report, the first of three Metro Police Officers to respond located the Jeep as it turned off Edgehill Avenue onto Villa Place.  The officer activated his blue lights and siren in an attempt to stop the vehicle.  The Defendant refused to stop, and proceeded to drive a meandering route primarily through residential streets crowded with pedestrians.  The Defendant maintained a speed of approximately thirty-five miles per hour, took wide turns outside his lane of travel, and drove through six stop signs and one red light.  During the course of this automobile "chase" two other Metro Police units joined in the pursuit, also activating their lights and sirens. The Defendant eventually stopped the vehicle and fled on foot.

After he abandoned the vehicle, the Defendant was pursued on foot by all three Metro Police officers involved in the car chase.  The Defendant was eventually tackled by the swiftest of the trio, but continued to be uncooperative.  The Defendant ultimately was apprehended after all three police officers became involved in the struggle and a can of pepper spray was used.  At the time of his apprehension the Defendant had in his hand what appeared to be a crack pipe.

The Defendant was first indicted on five charges: theft, possession of drug paraphernalia, resisting arrest, one count of misdemeanor evading arrest and one count of Class E felony evading arrest.  A superceding indictment was issued charging the Defendant with theft, Class D felony evading arrest with risk of injury or death, possession of drug paraphernalia, and resisting arrest. Just prior to trial, the State dropped the theft charge. A jury trial was conducted, and the Defendant was found guilty of Class D felony evading arrest with risk of injury or death and misdemeanor resisting arrest, but not guilty of possession of drug paraphernalia.  A sentencing hearing was conducted, at the conclusion of which the Defendant was determined to be a career offender and sentenced to

---

[1]While the Defendant was convicted of two offenses, all of his issues on appeal pertain to his felony evading arrest conviction.  The Defendant has not challenged his misdemeanor resisting arrest conviction.

twelve years' imprisonment with the Tennessee Department of Correction (TDOC) for the felony evading arrest conviction and time served for the resisting arrest conviction.

The Defendant timely filed a motion for new trial. He obtained new counsel and filed an amended motion for new trial alleging the additional ground of ineffective assistance of counsel at trial. The Defendant later filed a consolidated motion for new trial raising eighteen separate grounds for relief. Following a hearing, the trial court denied the Defendant's motion for a new trial. The Defendant timely filed a notice of appeal.

## ANALYSIS

On appeal, the Defendant outlined six specific arguments in his brief: (1) Tennessee Code Annotated section 39-16-603(b) is an unconstitutional violation of the Caption Clause of the Tennessee Constitution; (2) there was insufficient evidence to sustain a conviction for evading arrest; (3) the evidence was insufficient "as a matter of law" to convict the Defendant of a Class D felony evading arrest where there was insufficient proof of risk of injury or death; (4) the trial court erred in sentencing the Defendant as a career offender because the State's notice of intent to seek enhanced punishment was defective; (5) the Defendant was denied his right to effective assistance of counsel because his trial counsel failed to request jury instructions on a lesser-included offense and failed to challenge the unlawfulness of the attempted arrest; and (6) the Defendant's Sixth Amendment right to a trial by jury was violated when the trial court made findings of fact for "sentence enhancing purposes."[2] We find the Defendant's arguments unpersuasive as to each claim except his argument that the trial court erred in sentencing him as a career offender because the State's notice of intent to seek enhanced punishment was defective.

## I. Constitutional Challenge to the Evading Arrest Statute

In his first claim, the Defendant alleges that subsection (b) of Tennessee Code Annotated section 39-16-603, which codifies the criminal offense of evading arrest by motor vehicle, is unconstitutional because it violates the "Caption Clause" found in Article II, Section 17 of the Tennessee Constitution. We disagree.

Tennessee Code Annotated section 39-16-603, titled "Evading arrest," contains two subsections. Subsection (a) makes it "unlawful for any person to intentionally flee by any means of locomotion" from a law enforcement officer if the person has been arrested or knows the officer is attempting to arrest the person. Tenn. Code Ann. § 39-16-603(a)(1). Subsection (b), under which the Defendant was convicted, makes it "unlawful for any person, while operating a motor vehicle . . . to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1). Thus, the Defendant asserts that the elements required to be convicted of evading arrest under subsection (b) do not require an arrest or attempted arrest, but merely a signal to stop from law enforcement,

---

[2]For the purposes of clarity and efficiency, we have combined the Defendant's six issues into the five addressed below.

thereby rendering the title of the statute, "Evading arrest," a "misnomer." Citing to the Caption Clause of the Tennessee Constitution, the Defendant now asserts the "Evading arrest" caption of Tennessee Code Annotated section 39-16-603 failed to inform him that he could face a felony conviction for attempting to evade police after ignoring their signal to stop when there was no arrest or attempt to arrest. Arguing that this type of surprise criminal conduct is what the Caption Clause of the Tennessee Constitution was designed to prevent, the Defendant contends the evading arrest statute is unconstitutional.

The provision of the Tennessee Constitution commonly termed the Caption Clause states: "[n]o bill shall become law which embraces more than one subject, that subject to be expressed in the title." Tenn. Const. art. II, § 17. The purpose of this provision is to "prohibit so-called 'omnibus bills' and bills containing hidden provisions of which legislators and other interested persons might not have appropriate or fair notice." State ex rel. Blanton v. Durham, 526 S.W.2d 109, 111 (Tenn. 1975). However, "the law is well established that codification of a legislative enactment cures all defects in the caption of a bill." State v. Jones, 889 S.W.2d 225, 228 (Tenn. Crim. App. 1994) (citing Harmon v. Angus R. Jessup Associates, Inc., 619 S.W.2d 522, 523 (Tenn. 1981)). The appellate courts of Tennessee have held that "defects are cured from the effective date of the Codification Act forward." Id. (citing Keaton v. State, 372 S.W.2d 163, 164 (Tenn.1963)).

We note that the language of the act codified in Tennessee Code Annotated section 39-16-603, now challenged by the Defendant, originated in Chapter 467 of the Public Acts of 1995 and took effect on July 1, 1995. See 1995 Tenn. Pub. Acts, ch. 467, §§ 1, 3. If any defect in the caption or title of this act existed, it was cured by codification on February 13, 1996. See 1996 Tenn. Pub. Act, ch. 554, §§ 1-2. We acknowledge that a valid caption clause challenge can be brought where a crime was committed before the act criminalizing the conduct was codified. See State v. Chavis, 617 S.W.2d 903, 905 (Tenn. Crim. App. 1980); see also State v. Chastain, 871 S.W.2d 661, 666 (Tenn. 1994). However, the Defendant was not convicted for evading arrest by motor vehicle during the approximately seven and a half months between the enactment of the evading arrest act in July of 1995 and its eventual codification in February of 1996. Rather, the Defendant committed his crime in September of 2001, well after the effective date of the applicable Codification Act. Therefore, no portion of the evading arrest act, now codified in Tennessee Code Annotated section 39-16-603, is unconstitutional as a violation of the Caption Clause of the Tennessee Constitution.[3] This issue has no merit.

## II. Insufficient Evidence

The Defendant argues that there was insufficient evidence to sustain his conviction of evading arrest by motor vehicle with risk of injury or death. To support his claim, the Defendant argues that: (1) the evading arrest statute requires there to be an arrest or attempt to arrest, and the

---

[3]We also find the Defendant's argument to be misplaced. The constitutional provision in question addresses itself to the "title" or "caption" of the bill enacted by the legislature, not the "headings" or "catch lines" prepared by the Tennessee Code Commission. Nevertheless, even if the bill enacting the crime of felony evading arrest violated the "caption clause" of the Tennessee Constitution, the subsequent "Codification Act" cured any such defect.

police never attempted an arrest until the Defendant exited the vehicle; and (2) there was never a risk of bodily injury or death to any innocent bystanders. We disagree with both assertions.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

A.  Insufficient evidence of an arrest or attempted arrest

The portion of the evading arrest statute at issue states: "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having first received any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1). However, the Defendant now asserts that subsection (b) of the evading arrest statute, under which he was charged and convicted, also requires that "an officer be arresting or attempting to arrest a person," quoting the trial judge from her order denying his motion for a new trial.[4] The Defendant further contends that all three police officers involved in the pursuit never actually attempted to arrest him until after the car chase was over and he had left the vehicle. Therefore, the Defendant argues, there was insufficient

---

[4]The trial judge ruled that subsection (b) of the evading arrest statute did require an arrest or attempted arrest, noting this interpretation was clear when the subsection was read in the context of the entire statute. The judge made this ruling when denying the Defendant's claim in his motion for new trial that the evading arrest statute did not require an arrest and therefore violated the Caption Clause of the Tennessee Constitution.

evidence presented at trial to sustain a conviction against him for evading police while both operating a motor vehicle and while an officer was arresting or attempting to arrest him.

We note that the Defendant now argues the exact opposite interpretation of subsection (b) of the evading arrest statute from the interpretation he espoused in his previous claim. However, the Defendant's argument fails regardless of which of the two interpretations are used. First, even accepting the Defendant's sufficiency argument interpretation of subsection (b) as requiring an arrest or attempted arrest, he has failed to carry the burden of proving no rational trier of fact could have found that the police were indeed attempting to arrest him the moment he ignored their signal to stop the motor vehicle he was driving. Second, and more significantly, this Court has consistently held that subsection (b) of the evading arrest statute does not require, as an element of the offense, that an officer be arresting or attempting to arrest a person in order for them to be convicted under subsection (b) of the evading arrest statute.

This Court has previously held that the four required elements to sustain a conviction under Tennessee Code Annotated section 39-16-603(b) were that the defendant: "(1) was operating a motor vehicle; (2) on a street in this state; (3) received a signal from a law enforcement officer to bring his vehicle to a stop; and (4) intentionally fled or attempted to elude the officer." State v. Reginald Hughes, No. M2003-00543-CCA-R3-CD, 2003 WL 22748463, at *3 (Tenn. Crim. App., Nashville, Nov. 21, 2003). We have also concluded that subsection (a) of the same statute, which does require that the person "'[k]nows the officer is attempting to arrest the person,'" is distinct from subsection (b), the latter addressing a specific "mode of evading arrest," i.e., through the use of a motor vehicle. State v. Thaddaeus Medford, No. W2002-00226-CCA-R3-CD, 2002 WL 22446575, at *12 (Tenn. Crim. App., Jackson, Oct. 21, 2003) (quoting Tenn. Code Ann. §39-16-603(a)(1)(A)). Therefore, this Court concluded, "[t]he statutory language is straightforward and unambiguous" that subsection (b) requires only a signal to stop, and not an arrest or attempted arrest. Id.

The record clearly shows that in the case at hand, three separate police officers signaled for the Defendant to stop the motor vehicle he was driving on the streets of Nashville through the use of flashing lights and sirens. The Defendant refused to stop; instead he chose to flee and attempted to elude the police first in a motor vehicle and later on foot. Accordingly, the Defendant has failed to meet his burden of demonstrating that no rational trier of fact could have found that he was guilty beyond a reasonable doubt of all the essential elements of the crime for which he was convicted.

B. Insufficient evidence of risk of bodily injury or death to innocent bystanders

The Defendant also argues there was insufficient evidence to support his conviction of the Class D felony of evading arrest with risk of injury or death. The Defendant asserts the applicable portion of the statute requires that the State prove he put innocent bystanders in peril of bodily injury or death. The Defendant claims the State failed to prove that any pedestrians were ever in danger throughout the entire "slow-speed" automobile chase through the streets of Nashville, and therefore insufficient evidence was presented at trial to sustain his conviction of evading arrest as a class D felony.

The portion of the evading arrest statute at issue states: "[a] violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or third parties, in which case a violation of subsection (b) is a Class D felony." Tenn. Code Ann. § 39-16-603(b)(3). The Defendant correctly states that the mere assertion that a person refused to stop after the police have activated emergency equipment and that there were bystanders in the general vicinity is insufficient to find risk of bodily injury or death. See State v. Barry Marable, No. M1999-00576-CCA-R3-CD, 2001 WL 1028817, at *4 (Tenn. Crim. App., Nashville, Sept. 7, 2001) (holding there was insufficient evidence to support a conviction of evading arrest by motor vehicle with risk of injury or death). The Defendant also points to selective portions of the police officers' testimony at trial which suggests that no innocent bystanders were ever placed in peril.[5] The Defendant argues that any pedestrians who suddenly moved out of the streets during the chase did so not because they were endangered by his driving, but rather because of the flashing lights and blaring sirens of the three police cars following him.

The record on appeal contains ample testimony from the pursuing officers, the only witnesses called at the trial, which support the Defendant's conviction. The jury heard testimony that the area of the chase was heavily populated, that as the vehicles went down crowded streets people were "scattering everywhere," and that if the pedestrians had not moved out of the way they would "very possibly" have been injured. There was also testimony that at the intersection where the Defendant ran a red light there was "fairly heavy" traffic and at least one motorist was forced to stop abruptly to avoid a collision with the Defendant. Other testimony revealed that the Defendant "swooped out into oncoming traffic" when he made turns, never slowed down as he ran multiple stop signs and a red light, and drove thirty-five miles per hour on streets crowded with children and other pedestrians under circumstances in which one officer said only fifteen to twenty miles per hour would have been the safe speed.

Unlike the facts in Marable, in this case there is more than mere speculation of the presence of innocent bystanders who may have been in danger. The testimony presented at trial supports the jury's determination that the Defendant be convicted of a Class D felony for placing innocent bystanders at risk of injury or death. As noted above, questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. After considering all the evidence presented on appeal in a light most favorable to the State, we determine that a rational trier of fact could have found beyond a reasonable doubt that the Defendant placed innocent bystanders at risk of injury or death during his attempt to elude the police. Accordingly, there was sufficient evidence to sustain the Defendant's conviction for Class D felony evading arrest by motor vehicle with risk of injury or death. This issue has no merit.

---

[5]At trial, one officer stated he did not "remember seeing any vehicle slam on their brakes," and did not "believe any pedestrian had to jump out of the way," while another officer testified that he did not see the Defendant "skid" during his high-speed turns.

### III. Notice of Intent to Seek Career Offender Status was Defective

The Defendant asserts that the trial court erred in sentencing him as a career offender, as opposed to a standard, Range I offender, because the State's notice of enhanced punishment was defective. The Defendant argues that the notice was defective for two reasons: (1) the notice was not signed;[6] and (2) the notice was not re-issued after the case it was filed under was "nolled" and replaced by a superceding case.[7]    Therefore, the Defendant now claims that he did not receive "proper notice" that the State intended to seek enhanced punishment because of these defects. We disagree that he failed to receive proper notice because the form lacked a signature, but find merit with his argument that he was not put on notice that the State was seeking enhanced punishment for the new offense contained in the superceding indictment.

> Tennessee statutes require that:
> [i]f the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel . . . .   Such statement . . . must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions.

Tenn. Code Ann. § 40-35-202(a). Our Rules of Criminal Procedure further require that, "[w]ritten statements of the district attorney giving notice that the defendant should be sentenced to an enhanced punishment, for an especially aggravated offense, and/or as a persistent offender shall be filed not less than ten (10) days prior to trial." Tenn. R. Crim. P. 12.3(a). This Court has previously held that the purpose of the statutory notice requirement of intent to seek multiple, persistent or career offender sentence enhancement is to provide the defendant with "fair notice" that he faces the possibility of "other than standard sentencing." State v. Taylor, 63 S.W.3d 400, 412 (Tenn. Crim. App. 2001) (citing State v. Adams, 788 S.W.2d 557 (Tenn. 1990)). Such fair notice is intended to "facilitate plea-bargaining, to inform decisions to enter a guilty plea, and to assist with decisions regarding trial strategy." Id.

#### A. The notice of intent to seek enhanced punishment was not signed

Our Supreme Court has held that when a detail in the notice to seek enhanced punishment is incorrect, the proper inquiry is whether "the notice was materially misleading," and further noted

---

[6]The Defendant cites to the Local Rules of Davidson County Courts of Record, Rule 6.03, which states that "all pleadings . . . submitted for consideration by the court will be personally signed by at least one attorney of record in his/her individual name . . . ." The Defendant claims that since the State failed to sign the notice of intent for enhanced punishment, it was "not a pleading and should not have been accepted for filing."

[7]The State filed a Notice of Enhanced Punishment on March 15, 2002, in Case No. 2002-D-2420. On April 9, 2002, a superceding indictment was issued under Case No. 2002-B-625, which indicated on its face that it superceded "old case No. 2001-D-2420." On May 1, 2002, the trial court entered an order of nolle prosequi in Case No. 2001-D-2420. Case No. 2002-B-625 proceeded to trial.

that "when the State has substantially complied with Section 40-35-202(a), an accused has the duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." Adams, 788 S.W.2d at 559. In the case at hand, the Defendant has failed to allege or prove any prejudice he suffered as a result of the State's failure to sign the notice to seek enhanced punishment. The Defendant failed to raise the issue of a defective notice either before or during trial. The Defendant did raise the issue at the sentencing hearing, but also admitted that he received actual notice of the State's intent to seek enhanced punishment. In a colloquy with the Defendant's trial counsel, the trial judge stated for the record:

> [w]e talked about [the notice] prior to going to trial, I mean, we had a discussion, and there was nothing ever brought up about the fact that it was not signed, obviously something that could be cured right away. You had notice of it, it was given March 15th. You admit you had notice of it . . . . It's a notice statute. That is so you know what you are facing. I made a point of making sure Mr. Livingston knew, because I didn't want to see this again on a post conviction . . . .

We conclude that the State substantially complied with the requirements of the notice statute as to the charges outlined in the first indictment. The notice, included as part of the record on appeal, while absent a signature, contains the State's express intent to seek enhanced sentencing, sets forth the nature of the Defendant's prior felony convictions, the dates and identity of the courts issuing the prior convictions, and was filed well in advance of the required ten days prior to trial. The Defendant admits to having actual notice of the State's intent to seek career criminal status despite the absence of a signature at the end. The Defendant has failed to allege how he was prejudiced by this minor clerical error. Having demonstrated no prejudice from his perceived "defect" in the State's notice due to the absence of a signature, we conclude that the Defendant received sufficient fair notice of the State's intent to seek enhanced punishment on each charge contained in the original indictment as required by Tennessee Code Annotated section 40-35-202(a) and applicable case precedent.

### B. No notice of intent to seek enhanced punishment for the new offense charged in the superceding indictment

In his appellate brief, the Defendant asserted: "[the] notice was filed in case number 2002-D-2420 and was superceded by case number 2002-B-625. This defect was never corrected by the State and at the sentencing hearing the state [sic] requested and ultimately obtained enhanced punishment against Mr. Livingston." While not specifically argued by the Defendant, we are compelled to review this issue in light of our supreme court's recent decision State v. Carter, 121 S.W.3d 579 (Tenn. 2003).

In Carter, the defendant was charged in the original indictment with possession with intent to deliver 300 grams or more of cocaine and carrying a firearm. The State filed a notice of enhanced punishment corresponding to this original indictment. After further investigation, a second indictment was issued lowering the amount of cocaine possessed to twenty-six grams, and adding

the additional charges of conspiracy and money laundering. The first indictment was dismissed, and the State did not file a second notice of enhancement with respect to the second indictment. See Carter, 121 S.W.3d at 585. Mr. Carter argued that the notice of enhancement filed under the original indictment did not "'survive' its dismissal," and that the notice was "insufficient because the second indictment did not charge the same offenses as the first." Id. at 586.

The Tennessee Supreme Court rejected Mr. Carter's first argument but agreed with his latter claim. The court reasoned:

> the second indictment also contains two entirely new offenses in addition to the earlier indicted offenses. Thus the second indictment is not simply a re-indictment for the same crimes. Because of this, we find that at least as to the conspiracy charge, Carter was not provided sufficient notice of the State's intent to seek enhanced sentencing.[8]

Id. However, the court also noted that "where both indictments charge the same crime, the defendant has no reason to believe enhanced sentencing would not apply to a conviction in either indictment." Id. Thus, the court held that while Mr. Carter's enhanced punishment for his conspiracy conviction required reversal because he did not receive sufficient notice, it upheld his enhanced punishment for the possession conviction charged in the original indictment.

In the case at hand, the Defendant was originally indicted for five offenses, including misdemeanor evading arrest and Class E felony evading arrest. As noted above, we find the Defendant was put on sufficient notice that the State intended to seek enhanced punishment with regard to the offenses listed in the first indictment. However, a superceding indictment was issued in which the two evading arrest offenses were replaced with a single count of Class D felony evading arrest by motor vehicle with risk of injury or death. The State did not file a notice of intent to seek enhanced punishment to correspond with the superceding indictment. The Class D felony evading arrest charged in the second indictment was an entirely new offense, and in a higher class, than the dropped evading arrest charges for which the Defendant was notified he faced enhanced punishment if convicted. Applying the rule set forth in Carter, we find that the Defendant was not sufficiently notified that he faced enhanced punishment for the offense of Class D felony evading arrest by motor vehicle with risk of injury or death. The Defendant should therefore have been sentenced as a standard, Range I offender, and we must modify his sentence accordingly.

C. Sentencing as a standard, Range I offender

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts

---

[8] Mr. Carter was acquitted on the counts of money laundering and possession of a weapon, rendering the question of whether he had notice as to those offenses moot. See Carter, 121 S.W.3d at 586 n.2.

and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because the trial court erroneously sentenced the Defendant as a Range III persistent offender, we find there is no presumption of correctness. Therefore we now review the Defendant's sentence under a purely de novo standard. See Ashby, 823 S.W.2d at 169.

In calculating a sentence for a Class D felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class D felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e). The Sentence for a Class D felony as a Range I standard offender is "not less than two (2) nor more than four (4) years." Tenn. Code Ann. § 40-35-112(a)(4). Therefore, the Defendant's presumptive sentence for his Class D felony conviction for evading arrest by motor vehicle with risk of injury or death is the minimum in the range, or two years.

In the case at hand, we find the Defendant has "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(2). In fact, the Defendant has quite an extensive history of criminal convictions and behavior; his presentence report lists no less than twenty prior convictions. Based on the evidence contained in the record on appeal, we find enhancement factor number (2) applies. We further find that no mitigating factors would apply in the Defendant's case. Accordingly, we sentence the Defendant to four years, the maximum sentence allowed in his range, for his Class D felony evading arrest conviction.

The trial court noted for the record that the Defendant did not deserve alternative sentencing, stating:

> with his history he is an individual who has wasted every opportunity this court has provided him -- or these courts have provided him. And he's been in every one of them . . . He's had Community Corrections in the past, probation in the past, split confinement in the past. He has not shown any reason why I should do that, and I find that he's not amenable to treatment anyway.

While the evidence supports the trial court's findings, we note that the trial court erred in sentencing the Defendant to twelve years as a persistent offender and therefore determined the Defendant to be ineligible for most alternative sentencing programs. However, under our modified sentence of four years the Defendant is eligible for alternative sentencing consideration. Therefore, we will examine de novo the Defendant's claim he is entitled to alternative sentencing.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated

-11-

or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). See also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

In the case at hand, the Defendant does possess a criminal history demonstrating a clear disregard for society's laws and morals, and has failed past rehabilitation efforts multiple times. Therefore, it is doubtful that the Defendant qualifies as a presumptive candidate for alternative sentencing even with his modified sentence of four years for a Class D felony conviction as a standard offender. Moreover, we find that confinement of the Defendant is necessary to "protect society by restraining" the Defendant because of his "long history of criminal conduct," and because "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully." Tenn. Code Ann. § 40-35-103(1)(A) and (C). Accordingly, we find the Defendant is not entitled to alternative sentencing and direct that his sentence be served in the Department of Correction.

## IV. Ineffective Assistance of Counsel

The Defendant also claims he was denied his right to the effective assistance of counsel as guaranteed by both the Federal and Tennessee Constitutions by two specific failures on the part of his trial counsel: (1) counsel's failure to request jury instruction on the lesser-included offense of reckless driving; and (2) counsel's failure to challenge the lawfulness of his arrest and to request that the trial court instruct the jury that an unlawful arrest is a statutory defense to a charge of evading arrest. We disagree.

We are compelled to begin our analysis of this issue by first noting that this Court has consistently held that raising the issue of ineffective assistance of counsel on direct appeal is a

practice "'fraught with peril' since it 'is virtually impossible to demonstrate prejudice as required' without an evidentiary hearing." State v. Blackmon, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001) (quoting Kirby George Wallace v. State, No. 01C01-9308-CC-00275, 1994 WL 504401 (Tenn. Crim. App., Nashville, Sept. 15, 1994)). Instead, ineffective assistance of counsel claims should normally be raised by a petition for post-conviction relief. See id. Nonetheless, our Supreme Court has held that such claims may be presented on direct appeal, and that when done so the reviewing court should apply the same standard as utilized for ineffective assistance of counsel claims in post-conviction proceedings. See State v. Burns, 6 S.W.3d 453, 461 n.5 (Tenn. 1999).[9]

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6

---

[9]We note that the Defendant was more than adequately warned of the dangers of raising the issue of ineffective assistance of counsel on direct appeal. At the very beginning of the hearing on his motion for a new trial, the judge inquired of the Defendant's new counsel:

> I'm sure you are familiar with the case law that says that this is fraught with danger, and that is I want to make sure that Mr. Livingston understands that if you want to proceed with this on your motion for new trial and then proceed on appeal with that issue, that if you don't succeed, then you've used all your issues for Post-Conviction as far as ineffective assistance of counsel, so that I think the Courts have said don't do this, so do you want to proceed on your allegations of ineffective assistance of counsel?

To which the defense replied: "Your Honor, I've spoken with Mr. Livingston concerning this matter and he did want to raise those ineffective assistance of counsel claims in the motion for new trial knowing that he could not file later for Post-Conviction relief." The Defendant then proceeded to argue only legal issues at the hearing, calling no witnesses nor putting on any proof pertaining to the ineffective assistance of counsel claim.

S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

A. Failure to request jury instruction on the lesser-included offense of reckless driving

The Defendant first asserts that his trial counsel should have requested a jury instruction on reckless driving as a lesser-included offense of the Class D felony evading arrest by motor vehicle with risk of injury or death, and his failure to do so amounted to ineffective assistance of counsel. However, as the trial court noted at the hearing on the Defendant's motion for new trial, the jury was instructed on two other lesser-included charges: (1) evading arrest without risk of injury or death; and (2) evading arrest by means of locomotion.[10] After considering these lesser-included offenses, the jury found the Defendant guilty as charged. Therefore, the trial court concluded, any failure to charge the jury with the offense of reckless driving was harmless. We agree with the trial court.

The proof does not preponderate against the findings of the trial court that any error in the defendant's trial counsel's failure to request jury instruction on the lesser-included offense of reckless driving was harmless. This Court has previously ruled in a case involving a defendant charged with evading arrest with risk of injury or death, that the failure to charge the jury on the lesser-included offense of reckless driving was harmless where the jury was instructed on the lesser-included offense of evading arrest without risk of injury or death. See State v. James McClennon, No. M2002-00153-CCA-R3-CD, 2003 WL 21458671, at *13 (Tenn. Crim. App., Nashville, June 24, 2003). A trial court's error in failing to charge the jury with a lesser-included offense may be harmless when the jury, by finding the defendant guilty of the highest offense to the exclusion of immediately lesser offenses, necessarily rejected all other lesser-included offenses. See State v. Allen, 69 S.W.3d 181, 189 (Tenn. 2002). Having determined that any deficient performance of the Defendant's trial counsel to request a jury instruction on the lesser-included offense of reckless driving was harmless error, we find the Defendant has failed to meet his burden of establishing the second prong of Strickland: that his trial counsel's performance led to actual prejudice.

_____

[10]Both of these lesser-included offenses, with which the jury was charged, are greater charges than reckless driving.

B. Failure to challenge lawfulness of arrest and failure to instruct on statutory defense

The Defendant also claims his trial counsel provided ineffective assistance of counsel because he failed to challenge the lawfulness of the underlying arrest and failed to request that the judge instruct the jury that an unlawful arrest is a statutory defense to the charge of evading arrest.[11] The Defendant maintains that in his case, the officers merely received information third-hand from a dispatcher who was in turn receiving information from a private citizen over the telephone. The Defendant argues that this information did not rise to the level of "probable cause" that he committed a criminal offense, and therefore his arrest was unlawful.[12] Citing to the statutory provision that makes an unlawful arrest a defense to evading arrest, the Defendant now asserts that his trial counsel provided ineffective assistance of counsel both for failing to challenge his arrest as unlawful, and for failing to request a jury instruction on the statutory defense to evading arrest. We disagree.

In rejecting this claim on the Defendant's motion for a new trial, the trial judge noted that "the arrest in this case was lawful, so there was not a basis [sic] instructing the jury that an unlawful arrest is a defense to an evading arrest charge." We agree, and add that we also find no evidence in the record on appeal to support a good-faith challenge to the lawfulness of the Defendant's arrest itself.

It is well-established law that a police officer may make "an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Terry v. Ohio, 392 U.S. 1, 20-21 (1968)). In Tennessee, an investigatory stop is initiated the moment a police officer activates his blue lights. See State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). The facts in this case are not in dispute: the owner of the stolen jeep, having already filed a stolen vehicle report, phoned the police and informed them she saw her vehicle being driven in a particular location; patrol officers were given the physical description of the stolen vehicle, including the tag number, over the police band radio; the patrol officers found a vehicle matching the description and tag number of the stolen jeep in the same general location where it was reported to be, and activated their blue lights as a signal to stop; the Defendant did not stop, but instead fled. While a strong argument could be made that the police had "probable cause" to effect an arrest upon first discovering the Defendant in the stolen vehicle, see Beck v. Ohio, 379 U.S. 89, 91 (1964), no reasonable person could conclude that the police did not at least have "reasonable suspicion" to make an investigatory stop given these facts.

After reviewing all the facts in the record on appeal, we conclude the Defendant has failed to prove by clear and convincing evidence that his trial counsel's performance was deficient. Having

---

[11]The evading arrest statute provides: "[i]t is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful." Tenn. Code Ann. § 39-16-603(b)(2).

[12]The Defendant cites to the landmark United States Supreme Court decision Beck v. Ohio, which states that the lawfulness of a warrantless arrest depends upon whether or not "at the moment the arrest was made, the officers had probable cause to make it." Beck v. Ohio, 379 U.S. 89, 91 (1964).

-15-

failed to established that his trial counsel's failure to challenge the lawfulness of his arrest or ask that the jury be instructed on the statutory defense to evading arrest amounted to deficient representation, we find the Defendant has failed to prove the first prong of the Strickland test. Having found the Defendant failed to prove the first prong of the Strickland test, we need not address the second prong of actual prejudice. Accordingly, we find the Defendant's claim of ineffective assistance of trial counsel is without merit.

**V. Sixth Amendment Right Violation When Trial Court Made Findings of Fact**

In the Defendant's final issue on appeal, he asserts that he suffered a Sixth Amendment violation of his right to trial by jury when the trial court made findings of fact for sentencing enhancement purposes. The Defendant argues that Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 124 S.Ct. 2531 (2004), establish that any fact that increases the penalty for a crime must be determined by a jury, not the trial court, for sentence enhancement purposes. The Defendant contends that because the trial court categorized him as a career offender, and commented that if he were not a career offender several enhancement factors would apply, his Sixth Amendment Right to a trial by jury was violated. We disagree. We note that portions of the Defendant's argument are rendered moot by our decision to modify his sentence to reflect his status as a standard, Range I offender. We elect to address his claims on their merits in order to facilitate possible further appellate review.

At the Defendant's sentencing hearing, the judge stated, "[L]ooking at the prior documents that the State has proven is [sic] Mr. Livingston has the sufficient convictions to find him to be a career offender." The judge then added, "But even if I were to find he was less than the career offender, Enhancing Factor Number 1, Number 8 and Number 13 apply to Mr. Livingston. . . . So Mr. Livingston, any way you look at it, is going to get a twelve-year sentence out of this." The judge then sentenced the Defendant to "twelve years as a career offender."

While we conclude that this claim ultimately does not present a Sixth Amendment issue, we are nonetheless compelled to address this argument in light of the United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531 (2004), reh'g denied, 2004 WL 1872712 (U.S. Wash. Aug 23, 2004). In Blakely, the high Court struck down a provision of the Washington state sentencing guideline, quite similar to the one in Tennessee, that permitted the trial judge to impose an "exceptional sentence" after the court made a post-trial determination that certain statutory enhancement factors existed. The Supreme Court determined that the protections in the Sixth Amendment to the Federal Constitution would allow a defendant's sentence to be increased only if the enhancement factors relied upon by the judge were based on facts reflected in the jury verdict or admitted by the defendant. See id. 124 S.Ct. at 2537. The Court concluded that "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id. at 2543.

The Blakely decision calls into question the validity of Tennessee's sentencing statutes, insofar as they permit trial courts to increase a defendant's presumptive sentence based upon enhancement factors found by a trial judge as opposed to findings made by a jury. However, in this

case the Defendant appears to claim the trial court erred by simply mentioning in dicta that three enhancement factors could have applied to the Defendant, while declining to actually apply any enhancement factors. It is clear that the Blakely rule would preclude the application of enhancement factors not determined by the jury or admitted by the Defendant. However, it is equally clear from the record on appeal that no enhancement factors were actually applied by the trial court in reaching the Defendant's original sentence. Therefore, there was no error in the trial judge's comment concerning enhancement factors.

However, the Defendant also claims that the trial court violated Blakely by "enhancing" his sentence through classifying him as a career offender as opposed to sentencing him as a standard, Range I offender or submitting this determination to a jury. We disagree. By Tennessee statute, "[a] 'career offender' is a defendant who has received: . . . [a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony." Tenn. Code Ann. § 40-35-108(a)(3). The trial court, upon examination of certified copies of the Defendant's court records, determined that the Defendant was a "career offender" as defined by statute. In Tennessee, a defendant "who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c). By statute, a "'Range III' sentence is . . . [f]or a Class D felony, not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(c)(4). Thus, the Defendant, sentenced to twelve years for the Class D felony evading arrest conviction, was issued the only sentence allowed by statute for a Range III offender. The Defendant's argument on appeal that his Sixth Amendment right to trial by jury was violated because the court, and not a jury, determined his prior felony convictions made him a career offender is not supported by current law.

The Supreme Court has clearly stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). In Blakely, the Supreme Court applied the Apprendi rule to Washington's sentencing guidelines and established it as a constitutional "right" applicable to the states. Blakely, 124 S.Ct. at 2538-39. The Defendant was originally classified as a career offender based solely on the fact of his prior felony convictions, and his sentence was not enhanced above the statutory maximum for a Range III offender. Accordingly, the Defendant's sentence did not run afoul of Apprendi or Blakely, and his Sixth Amendment right to a trial by jury was not violated when the court used his record to determine he was a career offender. However, as noted above, the trial court did err in sentencing the Defendant as a Range III offender for his Class D felony conviction because he did not receive sufficient notice of the State's intent to seek enhanced punishment. Accordingly, this Court has modified the Defendant's sentence to reflect his status as a standard, Range I offender.

Following the same principles outlined above, our enhancement of the Defendant's sentence from the Range I presumptive two years to four years based on the Defendant's "history of criminal convictions" does not run afoul of Apprendi or Blakely. See State v. Antonio Fuller, No. M2002-02377-CCA-R3-CD, 2004 WL 1562546, at *31 (Tenn. Crim. App., Nashville, July 13, 2004). The Defendant's Sixth Amendment right to have a jury determine all facts legally essential to his

punishment was not violated by the trial court under his original sentence, nor is it violated now under his modified sentence. This issue has no merit.

## CONCLUSION

For the foregoing reasons we affirm the trial court's judgment as to the Class D felony conviction but modify the Defendant's sentence to four years to be served in the Department of Correction as a Range I standard offender.

_____
DAVID H. WELLES, JUDGE